STATE of Wisconsin,
Plaintiff-Co-Appellant,

Honorable Peter L. GRIMM,
Intervenor-Respondent,

v.

Joshua D. CONGER, Defendant-Appellant.

Supreme Court

*No. 2008AP755–CR. Oral argument December 1, 2009.*
*—Decided June 30, 2010.*

2010 WI 56

(Also reported in — N.W.2d —.)

For the defendant-appellant there were briefs by *Anthony L. O'Malley* and *Zacherl, O'Malley & Endejan, S.C.*, Fond du Lac, and oral argument by *Anthony L. O'Malley.*

For the plaintiff-co-appellant the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the intervenor-respondent there was a brief by *Brady C. Williamson, Katherine Stadler, Patricia L. Wheeler,* and *Godfrey & Kahn, S.C.*, Madison, and oral argument by *Patricia L. Wheeler.*

An amicus curiae brief was filed by *Ben Kempinen* and *the Frank J. Remington Center, University of Wisconsin Law School,* and oral argument by *Ben Kempinen.*

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2007–08).[1] It centers on a plea agreement that the Fond du Lac County Circuit Court rejected, and it presents three related questions. First, under what circumstances may a circuit court reject a plea agreement? Second, what factors may a court consider when it reviews a plea agreement? In answering the second question, we are asked to address whether the views of law enforcement may be among the factors considered.

---

[1] "Bypass by certification of court of appeals or upon motion of supreme court. The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion. The supreme court may refuse to take jurisdiction of an appeal or other proceeding certified to it by the court of appeals." Wis. Stat. § (Rule) 809.61. All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

¶ 2. Third, as a corollary to those two questions, we must determine whether a judge who has rejected a plea agreement must then automatically withdraw from further participation in the matter, and, if not, whether the circumstances of this case at this point require such a recusal.

¶ 3. The first two questions presented by this case are answered by Wis. Stat. § 971.29[2] (which permits amendment of the charge without judicial approval only prior to arraignment) and established precedent concerning the circuit court's inherent authority to reject a plea that is not in the public interest. Thus, a circuit court must review a plea agreement independently and may, if it appropriately exercises its discretion, reject any plea agreement that does not, in its view, serve the public interest. That review is analogous to the court's independent determination that a factual basis exists for the plea and its independent determination pursuant to Wis. Stat. § 971.08(1) that the plea is made knowingly, intelligently, and voluntarily; such independent determinations are safeguards built into our system to protect the integrity of the plea process. When a court determines independently whether a plea is in the public interest, it is no more a reflection on the

---

[2] Wis. Stat. § 971.29 states,

Amending the charge. (1) A complaint or information may be amended at any time prior to arraignment without leave of the court. (2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial. (3) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial.

prosecutor's integrity or judgment than when it determines independently that a factual basis supports the plea.

¶ 4. As for the factors a court may consider when it makes that independent determination, we reiterate, as other courts have done, that the public interest is a consideration that is not capable of precise outlines. Accordingly, the factors that a court may weigh when defining the public interest involved will vary from case to case. One appropriate factor among many may well be the viewpoint of law enforcement; a court's consideration of that factor in its analysis does not automatically invalidate its ultimate decision with regard to the plea.

¶ 5. Finally, in answer to the questions about required recusal, we conclude that a court's rejection of a plea does not in and of itself become a "personal interest in the outcome of the matter," and Wis. Stat. § 757.19(2)(f)[3] is not implicated here.[4] We are unable to

---

[3] Wis. Stat. § 757.19(2)(f) provides, "Any judge shall disqualify himself or herself from any civil or criminal action or proceeding . . . [w]hen a judge has a significant . . . personal interest in the outcome of the matter."

[4] Conger advances another argument for the circuit court's recusal as well: that the circuit court's consideration here of law enforcement's view of the plea was a violation of the rule set forth in *State v. Matson*, 2003 WI App 253, ¶ 27, 268 Wis. 2d 725, 674 N.W.2d 51 (holding that a letter submitted to the court by the investigating detective recommending a sentence length constituted a breach of a plea agreement that had included a joint sentencing recommendation). When the State breaches a plea agreement, the defendant is entitled to withdraw the plea or to be resentenced before a different judge. *Id.*, ¶¶ 33–34. Because we conclude that views of law enforcement may be an appropriate factor in determining whether a plea serves the public interest, and that considering law enforcement views as one factor at a plea hearing is different from considering law

ascertain on this record whether in the course of the appeal Judge Grimm has become a party to this case,[5] in which event it appears that Wis. Stat. § 757.19(2)(b)[6] would now require his recusal from further participation in this case. Because the record is undeveloped as to that question, we remand to the court of appeals the issue of whether, as a matter of law, Judge Grimm has now become a party or amicus. We then expect a remand to the circuit court for a decision under Wis. Stat. § 757.19(2) in regard to recusal.

¶ 6. We therefore affirm the order of the circuit court denying the motion to amend the information pursuant to the plea agreement. The order denying Conger's motion seeking the court's recusal was also properly denied. However, we remand the issue of whether Judge Grimm has now become a party or amicus and whether recusal is now required.

## I. BACKGROUND

### A. The Circuit Court

¶ 7. This case arises from the rejection by the Fond du Lac County Circuit Court, the Honorable Peter L. Grimm presiding, of a plea agreement that had been

enforcement views about the proper length of a sentence, we see no violation of *Matson* here and thus no grounds for recusal on that basis.

[5] The circumstances surrounding what may or may not be the circuit court judge's designation as a party in this case are explained more fully at ¶¶ 46–47, infra.

[6] Wis. Stat. § 757.19(2)(b) states, "Any judge shall disqualify himself or herself from any civil or criminal action or proceeding . . . [w]hen a judge is a party or a material witness, except that a judge need not disqualify himself or herself if the judge determines that any pleading purporting to make him or her a party is false, sham or frivolous."

negotiated by the prosecutor and the defendant, Joshua D. Conger. The court of appeals, in its certification of the appeal to this court, set forth the underlying facts:

> The defendant, Joshua D. Conger, was charged with possession with intent to deliver more than 200 grams but less than 1000 grams of marijuana within 1000 feet of a park, a Class H felony, Wis. Stat. ch. 961, and possession of drug paraphernalia, Wis. Stat. § 961.573(1). The police found forty-eight individually wrapped baggies of marijuana totaling 774 grams, hidden behind a ceiling tile in the home Conger shared with his girlfriend and a third person. The officers also found a digital scale, a box of sandwich baggies, and "a large amount" of marijuana stems. Conger also apparently told a police officer that he owed $2900 to a drug supplier.
>
> The parties negotiated a plea agreement, which reduced the felony charge to three counts of misdemeanor possession of marijuana with intent to deliver, and the drug paraphernalia charge was to be dismissed and read-in. When the plea agreement was presented to the court, the State explained that the decision to reduce the charge was based on the facts that Conger was twenty-two at the time of the offense with no prior record, the drugs were found in the ceiling of a shared residence, his girlfriend was also being prosecuted, Conger had not admitted that the drugs were his, Conger had been doing well on bail and had participated in drug and alcohol counseling, and the State wanted to give him a chance to "clean up his act."[7]

¶ 8. The initial plea hearing was held on October 24, 2007; the hearing was adjourned twice to December 7, 2007, and February 18, 2008, for the specific purpose of having the State obtain additional information that

---

[7] *State v. Conger,* No. 2008AP755–CR, certification memorandum at 2–3 (Wis. Ct. App. July 2, 2009) (footnote omitted).

the court requested before ruling on the motion to amend the charges as part of the plea agreement. At the first hearing, the court expressed skepticism about the amendment of the charges—stating at one point that it was "wrestling with the motion to amend"—and made reference to its responsibility under *State v. Kenyon*,[8] which authorizes a court to reject a plea agreement that does not serve the public interest. At the conclusion of the first hearing, the court specified four facts it wanted to know: the correct weight of the marijuana seized in the case, its street value, the status of co-defendants' cases, and the drug unit's[9] opinion of the agreement. The court then stated:

> *State v. Kenyon* indicates the Court—Courts have a responsibility on the motion, and I appreciate the reasons submitted. . . . But in deference to the attorneys' recommendation, I will adjourn the matter, and I have asked a couple questions the lawyers didn't have answers to, and I think if we come back to court and the answers can be given that are all positive, while it's a very close case, I think if the answers come back positive, I will go along with the agreement, but if the answers come back negative, then I will have to exercise my discretion and make a decision under *State v. Kenyon.*

¶ 9. At the second plea hearing, having obtained the answers to three of its questions, the court stated, "If I had to decide right now based on what we have, the answer is still no, I'm not going to accept it . . . ." The court made reference to the answers it had obtained

---

[8] *State v. Kenyon*, 85 Wis. 2d 36, 46–47, 270 N.W.2d 160 (1978).

[9] The law enforcement unit in this case is the Lake Winnebago Area Metropolitan Enforcement Group, referenced in court transcripts as "the MEG Unit."

674

from counsel, noting that "the quantity [of marijuana] [is] high, the dollar street value is high, so there [are] certainly uphill issues the Court has to address . . . ." However, the court again adjourned the hearing, saying that the agency's opinion of the plea bargain—the still-unanswered question—would be "a factor [the court] would reconsider."

¶ 10. At the third plea hearing, defense counsel informed the court that the MEG Unit "generally [is] not[] in favor of reductions from felonies to misdemeanors," and the prosecutor agreed. The court reiterated concerns it had stated in both previous hearings—beginning by observing that "what really jumps out in this record is the nature of the facts within the Criminal Complaint and the preliminary hearing transcript" concerning the scale of the drug operation at Conger's residence. The circuit court also expressed its concern about "send[ing] a message to like-minded people who allegedly maintain a drug trafficking place or allegedly possess large quantities with higher street values with intent to deliver." Among the factors cited by the circuit court was the fact that "the law enforcement unit of investigation and arrest is not agreeing to the plea bargain or the reduction from felonies to misdemeanors." The court denied the motion.

¶ 11. Following the denial of the motion, Conger moved the circuit court for an order of recusal on the grounds that in rejecting the plea agreement, the circuit court had "acted in an adverse capacity to a party in the same proceedings" by its "encouragement of the continued prosecution of the defendant" and therefore recusal was required under Wis. Stat. § 757.19(2)(c).[10]

[10] "Any judge shall disqualify himself or herself from any civil or criminal action or proceeding . . . [w]hen a judge previ-

Alternatively, he sought recusal on the grounds that the "appearance of justice" required by the Due Process Clause to the Fourteenth Amendment of the United States Constitution and by Wis. Stat. § 757.19(2)(g),[11] the court's disqualification was necessary because the court's refusal of the plea "gives rise to an 'appearance of partiality.' " The circuit court denied the motion.

## B. The Court of Appeals

¶ 12. Conger petitioned for an interlocutory appeal, and the State joined Conger's petition. In its May 23, 2008, order granting the petition, the court of appeals noted "the unique situation presented" and "agree[d] with the State that input from the circuit court [would] be beneficial." It therefore directed Judge Grimm "to arrange representation through the Director of State Courts and to file a response . . . ." In a June 10, 2008, order setting forth a briefing schedule, the court of appeals stated, "Conger and the State have been designated as an appellant and a co-appellant respectively. The circuit court judge, the Honorable Peter L. Grimm, has been designated as an intervenor-respondent."

¶ 13. The court of appeals then certified the appeal to this court under Wis. Stat. § (Rule) 809.61. In its certification memorandum, the court of appeals de-

---

ously acted as counsel to any party in the same action or proceeding." Wis. Stat. § 757.19(2)(c). The statute does not use the language Conger uses about acting "adversely"; Conger, in his motion, appears to assume, without providing supporting citation, that the judge's decision was the equivalent of having "acted as counsel."

[11] "Any judge shall disqualify himself or herself from any civil or criminal action or proceeding . . . [w]hen a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner." Wis. Stat. § 757.19(2)(g).

scribed the State and Conger as "co-appellants" and Judge Grimm as "the respondent." This court accepted the certification.

## II. STANDARD OF REVIEW

¶ 14. This court has not explicitly articulated the appellate standard for reviewing a circuit court's rejection of a plea agreement. However, it is implicit in the court's analysis in *State v. Kenyon,* 85 Wis. 2d 36, 45, 270 N.W.2d 160 (1978), that the rejection is reviewed as an exercise of discretion. First, the court referenced the exercise of discretion in its analysis: "[W]hen the jurisdiction of the court is invoked by the commencement of a criminal proceeding, the court can exercise the discretion described in [*Guinther et al. v. City of Milwaukee,* 217 Wis. 334, 258 N.W. 865 (1935)]." *Guinther* established a court's authority to reject a dismissal of a charge. Further, the court's analysis focused on the legal sufficiency of the lower court's rejection of the plea rather than a de novo review of the facts. *Id.* at 47. The court reversed the orders and remanded to the circuit court "for its reconsideration." *Id.* We will sustain a court's exercise of discretion if the court: (1) examined the relevant facts; (2) applied a proper standard of law; and (3) using a demonstrably rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

## III. ANALYSIS

### A. When a Circuit Court May Reject a Plea Agreement

¶ 15. Plea agreements occur routinely as part of the work of prosecutors, defense attorneys, and courts.

Such agreements may include charges to be dismissed, charges to be amended, the type of plea to be entered, and sentencing recommendations to be made to the court. The plea agreement at issue in this case involved a felony charge that was to be amended to three misdemeanors, another charge to be dismissed with the expectation that it would be read in at sentencing,[12] and a recommendation by the prosecutor for specific sentencing terms.

¶ 16. The legislature has defined the circumstances under which a prosecutor may amend charges. "A complaint or information may be amended at any time prior to arraignment without leave of the court." Wis. Stat. § 971.29(1). It seems evident that the language "prior to arraignment" is most sensibly read to set the outer limit of when the prosecutor may make such an amendment in his or her sole discretion. Otherwise, the language is surplusage.

¶ 17. All of the parties agree that there is a requirement of "leave of the court" for any post-arraignment amendment. Conger and the State argue,[13]

---

[12] Under the read-in procedure, "the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense." *State v. Floyd,* 2000 WI 14, ¶ 24, 232 Wis. 2d 767, 606 N.W.2d 155 (quoting *Austin v. State,* 49 Wis. 2d 727, 732, 183 N.W.2d 56 (1971)).

[13] As noted above, the State joined Conger's petition for interlocutory appeal. The court of appeals designated the State and Conger "co-appellants." The two make similar but not identical arguments for the reversal of the circuit court's decision. Both argue that, where, as here, a prosecutor can state a reasonable basis for the plea agreement, the court is obligated to defer to the prosecutor's exercise of his or her discretion.

rather, that the standard by which a court reviews a plea agreement requires a high degree of deference to reasonable exercise of the prosecutor's discretion, and that under the facts presented here, the prosecutor's recommendation was not so unreasonable that it reached the level where the court needed to step in. Stated differently, the argument is that a plea agreement endorsed by a prosecutor enjoys a strong presumption that it serves the public interest, and that failing to respect that presumption constitutes error on the part of the court. Though they frame their arguments in slightly different terms, both the State and Conger suggest setting a high standard of deference to a prosecutor's recommendation. They would require the court to find that a prosecutor had, in recommending a plea agreement, failed to use a "logical reasoning process ... [to] come to a reasoned conclusion" (Conger brief at 15) or "wholly failed to consider the interests of the victim ... or has shown some improper discriminatory motive" (State brief at 16). Both argue that in this case, deference to the prosecutor's recommendation is warranted, because the recommendation was made

Both argue that the circuit court's consideration of law enforcement's view of the plea was improper under *State v. Matson* (*see* ¶ 5, n.4, supra).

However, Conger makes the additional argument that the court's rejection of the plea agreement is improper on the grounds that it puts the court in the role of the prosecutor and thus deprives Conger of his due process rights under the United States Constitution to a neutral magistrate. On the question of recusal, the co-appellants differ. Conger argues that recusal is required here because the court has assumed the role of prosecutor and therefore there is an appearance of partiality which makes continued participation in the case unconstitutional and contrary to statute; the State argues that there are no grounds for recusal under these circumstances.

679

after consideration of all of the relevant facts, and constituted a reasonable exercise of a prosecutor's inherent power and well-established discretion with regard to the prosecution of cases.

¶ 18. Counsel for Judge Grimm argues that neither the statute nor case law provides a basis for such a standard. The test for evaluating a plea[14] is whether it serves the public interest, and, while other jurisdictions have taken other approaches, Wisconsin law has not wavered. For at least 75 years it has been the law in this state that a trial court is empowered to make that determination.

██

¶ 19. We begin by noting that in their respective spheres, the prosecutor and the court are afforded necessarily wide deference to do their jobs. "The discretion resting with the district attorney in determining whether to commence a prosecution is almost limitless . . . ." *Kenyon*, 85 Wis. 2d at 45. Indeed, the prosecutor's role has been called " 'quasi-judicial' in the sense that it is his or her duty to administer justice rather than simply obtain convictions." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 28, 271 Wis. 2d 633, 681 N.W.2d 110. Further, matters that are within a circuit court's exercise of discretion are reversible only where it can be shown that relevant facts were ignored or the law was incorrectly or unreasonably applied. We will sustain a court's exercise of discretion if the court: (1) examined the

---

[14] We note that other relevant factors for a court evaluating a plea agreement, such as whether a factual basis exists for the plea and whether the defendant has entered the plea knowingly, intelligently, and voluntarily, are not at issue here. See Wis. Stat. § 971.08(1); *State v. Lackershire*, 2007 WI 74, ¶ 34, 301 Wis. 2d 418, 734 N.W.2d 23.

relevant facts; (2) applied a proper standard of law; and (3) using a demonstrably rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d at 414–15.

¶ 20. There are clearly weighty and difficult decisions early in a prosecution that are left to the sole discretion of the prosecutor, as well as decisions following conviction that are left to the sole discretion of the court.[15] The cases that address matters of judicial and prosecutorial discretion repeatedly acknowledge the broad discretion vested, respectively, in a judge and in a prosecutor. However, the cases have not been fully harmonized on the question presented here, which is how, in a given case, to reconcile the "limited judicial supervision of prosecutorial motions to dismiss,"[16] with "the independent authority of the trial court to grant or refuse a motion to dismiss [charges]," *id.* at 45, and how those principles fit together with the district attorney's "great discretion in [the] decision to charge . . . [and the] negotiation of plea bargains,"[17] and the fact that "[n]either of these discretions[] . . . is unfettered."[18] For

---

[15] *Compare,* e.g., *State v. Kramer,* 2001 WI 132, ¶ 14, 248 Wis. 2d 1009, 637 N.W.2d 35 (a prosecutor has wide discretion in determining if he or she will prosecute a particular case) and *State v. Krueger,* 224 Wis. 2d 59, 67–68, 588 N.W.2d 921 (1999) (prosecutor has discretion to choose whether to bring one charge or multiple charges) *with Bubb v. Brusky,* 2009 WI 91, ¶ 31 n.9, 321 Wis. 2d 1, 768 N.W.2d 903 (circuit court has broad discretion in instructing the jury) *and State v. Grady,* 2007 WI 81, ¶ 31, 302 Wis. 2d 80, 734 N.W.2d 364 (circuit court has broad discretion in determining relevant factors to a sentencing decision).

[16] *Kenyon,* 85 Wis. 2d at 43.

[17] *State ex rel. White v. Gray,* 57 Wis. 2d 17, 29, 203 N.W.2d 638 (1973).

[18] *Id.*

example, with respect to district attorneys, this court stated in *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 166 N.W.2d 255 (1969),

> The district attorney in Wisconsin is a constitutional officer and is endowed with a discretion that approaches the quasi-judicial. It is clear that in his functions as a prosecutor he has great discretion in determining whether or not to prosecute. There is no obligation or duty upon a district attorney to prosecute all complaints that may be filed with him. While it is his duty to prosecute criminals, it is obvious that a great portion of the power of the state has been placed in his hands for him to use in the furtherance of justice, and this does not per se require prosecution in all cases where there appears to be a violation of the law no matter how trivial. In general, the district attorney is not answerable to any other officer of the state in respect to the manner in which he exercises those powers.

*Id.* at 378 (footnotes and citation omitted).

¶ 21. Conger argues here that a court having the power to reject a plea agreement usurps the prosecutor's role. He contends that it is solely the prosecutor's decision whether to prosecute and how to proceed with a prosecution. In rejecting the plea agreement, Conger argues, the circuit court in essence decided that the prosecution would have to go forward—a decision that is within the sole purview of the prosecutor.[19]

---

[19] This characterization is not consistent with the record, which indicates that the circuit court explicitly left to the prosecutor the decision of how to proceed in the case. (At the end of the final plea hearing, the court stated, "So the case will continue. The parties are certainly free or welcome to submit a revised plea bargain, but, if not, the case will be given a trial date.")

¶ 22. Under *Kenyon* and its predecessor, *Guinther,* however, we reconcile the apparent tension between powers within the prosecutor's realm and those within the court's realm with reference to the point in time that marks the boundary between the two in any given case: the point at which the court's jurisdiction is invoked. As we said in *Kenyon,*

> The discretion resting with the district attorney in determining whether to commence a prosecution is almost limitless . . . ; however, when the jurisdiction of the court is invoked by the commencement of a criminal proceeding, the court can exercise the discretion described in *Guinther* . . . .

*Kenyon,* 85 Wis. 2d at 45. This court in *Kenyon* also described another check on the power of the district attorney—the legislature:

> [T]he position of district attorney, though constitutional, was not one of inherent powers, but was answerable to specific directions of the legislature. It appears settled, therefore, in Wisconsin at least, that the prosecutor is subject to the enactments of the legislature . . . .

*Id.* at 42 (quoting *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 380, 166 N.W.2d 255 (1969)). Thus, both the fact that the court's jurisdiction is "invoked by the commencement" of a case and that the legislature has granted prosecutors sole discretion to amend a charge only prior to arraignment[20] mean that the prosecutor's unchecked discretion stops at the point of arraignment.

---

[20] "A complaint or information may be amended at any time prior to arraignment without leave of the court." Wis. Stat. § 971.29(1).

¶ 23. *Kenyon* makes clear that Wisconsin is not alone in this respect; it cites a case in which the United States Court of Appeals for the Fifth Circuit noted that "more than thirty states had, by statute or judicial decision, modified the common law to give courts a responsible role in the dismissal of a pending criminal proceeding by requiring an 'order' or 'leave' or 'consent' of court." *Id.* at 44 (citing *United States v. Cowan,* 524 F.2d 504, 509–10 (5th Cir. 1975)).

¶ 24. Thus, deciding whether to reject a plea agreement is squarely within the court's authority; to hold otherwise would permit encroachment by the executive branch into the realm that has historically, in Wisconsin, been that of the judicial branch. It is true that some other jurisdictions[21] have created different standards than Wisconsin's. While the language of our case law has emphasized the discretion of both the prosecutor and the court in various ways, our courts have been unfailingly consistent in holding that we do not impose such a limitation on a court when it is determining whether a plea agreement is in the public interest. In that regard, it is worth noting as well that our approach is consistent with that of the federal courts. The language of Rule 11 of the Federal Rules of Criminal Procedure makes clear that a court's review of a plea agreement is an independent one:

> (3) Judicial Consideration of a Plea Agreement.
>
> (A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), *the court may accept*

---

[21] *See, e.g., United States v. Ammidown,* 497 F.2d 615, 622 (D.C. Cir. 1973) ("[T]rial judges are not free to withhold approval of guilty pleas on [public interest grounds] merely because their conception of the public interest differs from that of the prosecuting attorney.")

*the agreement, reject it, or defer a decision* until the court has reviewed the presentence report.

. . .

(4) Accepting a Plea Agreement. *If the court accepts the plea agreement,* it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.

(5) Rejecting a Plea Agreement. *If the court rejects a plea agreement* containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

(A) inform the parties that the court rejects the plea agreement;

(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c) (emphasis added). Federal courts have made clear that rejecting a plea does not, in itself, constitute becoming involved in plea negotiations.[22]

---

[22] *See, e.g., U.S. v. Kraus,* 137 F.3d 447, 453 (7th Cir. 1998):

The court's authority vis à vis the plea agreement extends beyond the obligation to ensure that it is not the result of coercion or ignorance . . . . The defendant has no absolute right to have his guilty plea accepted by the court. On the contrary, "[a] court may reject a plea in [the] exercise of sound judicial discretion." Thus, where the parties have agreed to a particular sentence pursuant to Rule 11(e)(1)(C), for example, the court has the power—and under

¶ 25. That said, as we noted in *Kenyon* and explain herein, consideration of the views of the prosecutor as well as the defense attorney certainly enter into that determination.

¶ 26. Our approach vests authority in the circuit court to determine what pleas are in the public interest without permitting the court to intrude on the authority of the prosecutor to decide what charges to file or whether to file charges in the first instance. As we stated in *Kenyon,*

> [I]n all cases some finding should be made with respect to the impact of the ruling on the public interest in proper enforcement of its laws and the public interest in allowing the prosecutor sufficient freedom to exercise his legitimate discretion, to employ to the best effect his experience and training, and to make the subjective judgment implicit in the broad grant of authority under sec. 59.47, Stats.
>
> . . . [Here] the trial court . . . failed to make any determination concerning how granting or refusing the motion would affect the public interest. . . . [T]here must . . . be some concern with the public's right to have the crimes actually committed fairly prosecuted and to the protection of the rights of third persons. The

---

the Sentencing Guidelines, the explicit obligation—to consider whether that sentence is adequate and to reject the plea agreement if the court finds it not to be. U.S.S.G. § 6B1.2(c). Yet, a court may not act arbitrarily; if it elects to reject a plea agreement, it must be able to "articulate a sound reason" for doing so. Requiring the court to state on the record its reasons for rejecting a plea agreement "is the surest way to foster the sound exercise of judicial discretion." . . . So long as the court speaks in the context of "actively evaluating a plea agreement" and its remarks are confined to the agreement before it, the court does not become a participant in the plea negotiations in violation of Rule 11.

(citations omitted).

court should consider the various elements as they appear and then exercise its discretion.

*Kenyon,* 85 Wis. 2d at 47.

¶ 27. Our approach has thus required a circuit court to "consider the various elements" and then "exercise its discretion" when evaluating a plea agreement. When the court rejects a plea, the record must reflect an exercise of discretion. We are not persuaded that departing from it would be an improvement. We therefore hold that a circuit court may, in an appropriate exercise of discretion, reject a plea agreement that it deems not to be in the public interest.

¶ 28. Turning to the facts of this case, we must apply the proper standard of review to the circuit court's exercise of discretion. If the court considered the relevant facts and made no mistake of law, we will affirm.

### B. Factors to Consider When Evaluating a Plea

¶ 29. That brings us to the second question presented by this case, which concerns what factors are appropriate for a court to consider in deciding whether to reject a plea agreement. It is true, as this court noted in *Kenyon,* that the public interest standard is "admittedly broad," and that "*Guinther* sheds little light on the various factors and considerations which may legitimately be included under this rubric." *Kenyon,* 85 Wis. 2d at 46. It is also true that *Kenyon* did not ameliorate that problem. Rather, this court simply noted that "[i]t would be impossible to make an exhaustive list of just what to take into account in this regard." *Id*. at 47. We agree that it would be impossible to set forth an exhaustive list that would apply to the variety

of facts and charges that face circuit courts every day. However, we can identify some of the factors that could apply depending on circumstances.

¶ 30. To begin, *Kenyon* sketched the broad outlines of the appropriate inquiry into whether a plea is in the public interest. In that case, we noted that the circuit court should take into account "the public's right to have the crimes actually committed fairly prosecuted and to the protection of the rights of third persons," *Kenyon,* 85 Wis. 2d at 47, as well as "the public interest in proper enforcement of its laws and the public interest in allowing the prosecutor sufficient freedom to exercise his legitimate discretion, to employ to the best effect his experience and training, and to make the subjective judgment implicit in the broad grant of authority under sec. 59.47, Stats." *Id.*

¶ 31. Given those contours, a sensible—and important—starting point for a circuit court evaluating a plea is to consider the reasons stated by the prosecutor and defense counsel for recommending the plea agreement. Giving weight to the prosecutor's recommendation and supporting reasoning reflects the court's interest in honoring the public interest in providing a prosecutor freedom to exercise the discretion that his or her position authorizes. Likewise, the court's evaluation of the defense attorney's reasoning and recommendations reflects a balancing consideration of the public interest in a fair prosecution.[23]

---

[23] For example, during the plea and sentencing hearing in this case, the district attorney explained her reasoning for making the plea offer to the circuit court:

> I was the original attorney who made the plea offer in this case. I made that offer based on the fact that Mr. Conger has no prior

¶ 32. A review of other sources yields additional considerations that could be relevant and, thus, useful in particular cases. In *Myers v. Frazier,* 319 S.E.2d 782, 790 (W. Va. 1984), the list of factors relevant to the public interest includes: whether a defendant has voluntarily and intelligently entered into a plea bargain; whether a factual basis exists for his or her guilty plea; the general public's perception that crimes should be prosecuted; the interests of the victim; the court's ability to dispose of the case in a manner commensurate with the seriousness of the criminal charges and the character and background of the defendant; and the plea's usefulness in securing a legitimate and important

> juvenile record, no prior adult record. CCAP indicates that he has two previous convictions for FO citations: one for an underage alcohol violation, one for a snowmobile violation. Other than that, Mr. Conger has no previous record.

> . . . [T]he drugs were found in a house that Mr. Conger shared with his girlfriend as well as another individual who lived in that house. Mr. Conger never did admit that they were his.

> I do feel that it is a serious case. It was a large amount of drugs. However, based on the fact that Mr. Conger has no prior history, no misdemeanors, no FO possessions, no—other than the one underage drinking citation, no prior history with drugs or alcohol, that three misdemeanors is an appropriate resolution.

Likewise, Conger's defense attorney submitted a memorandum in support of the plea agreement in this case:

> The district attorney in this matter properly exercised its discretion. The discovery does not show direct possession of the contraband by the defendant. The attention to the defendant's address was related to activities of his girlfriend, who lived with him. The defendant did not admit his possession of the contraband, which was found above ceiling tiles in his and his girlfriend[']s apartment. Another person with access to the premises and location where the contraband was found was not charged, even though he lived there. The defendant is youthful and is a first offender. All of these reasons provide a proper basis for leniency in charging. The plea bargain should be approved.

689

prosecutorial interest (e.g., critical testimony needed to convict an accomplice).

¶ 33. It has also been observed that "[t]here may be situations in which the public interest might better be served by having a case tried rather than by having it disposed of by means of a guilty plea."[24]

¶ 34. In *Kalal,* 271 Wis. 2d 633, ¶ 32, we discussed factors a prosecutor may consider when deciding whether to file charges, and these factors overlap with determining the public's interest with regard to a plea:

• the extent of harm caused by the offense;

• the threat posed to the public by the suspect;

• the ability and willingness of the victim to participate;

• the disproportion between the authorized punishment and the particular offense or offender;

• possible improper motives of a complainant;

• cooperation of the suspect with the arrest/prosecution of others; and

• the possibility or likelihood of prosecution by another jurisdiction.

In *Kalal,* we adopted those factors from the American Bar Association's Standards for Criminal Justice. Similarly, ABA Standard 14–1.8 provides factors for a court to consider in assessing a plea agreement:

Consideration of plea in final disposition

---

[24] U.S. Dep't of Justice, U.S. Attorneys' Manual, Plea Agreements—Considerations to Be Weighed § 9–27.420 (1997), available at http://www.justice.gov/usao/eousa/foia_reading__room/usam/title9/title9.htm.

(a) . . . It is proper for the court to grant charge . . . concessions to defendants who enter a plea of guilty . . . when consistent with the protection of the public, the gravity of the offense, and the needs of the defendant, and when there is substantial evidence to establish that:

(i) the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct;

(ii) the concessions will make possible alternative correctional measures which are better adapted to achieving protective, deterrent, or other purposes of correctional treatment, or will prevent undue harm to the defendant from the form of conviction;

(iii) the defendant, by making public trial unnecessary, has demonstrated genuine consideration for the victims of his or her criminal activity, by desiring either to make restitution or to prevent unseemly public scrutiny or embarrassment to them; or

(iv) the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct.

Am. Bar Ass'n, Standards for Criminal Justice, Standard 14–1.8 (2d ed. 1980).

¶ 35. We are satisfied that a court's consideration of any of those factors, in evaluating a plea agreement, could be appropriate, depending on the factual circumstances of the case. We emphasize that the evaluation process is more of an art than a science. In other words, the factors we list herein are not to be construed as a mechanical, multi-element test. Rather, we simply have identified factors that could be relevant and helpful to a court in evaluating a plea agreement.

691

¶ 36. In this case, the circuit court discussed the following factors on the record:

- the amount of marijuana and dealer-related items recovered from defendant's bedroom;

- the fact that the recovered marijuana had a large street value;

- the defendant admitted owing $2900 to a supplier;

- the MEG unit did not "in general" agree with plea agreements that involved charge reductions;

- at 22, the defendant was "old enough" to make better decisions;

- the defendant acted with other people;

- the consequences of a felony conviction is a better deterrent for future criminal activity; and

- the prosecutor's given reasons for recommending the plea agreement to the court were more relevant to sentencing than to plea negotiations.

The court also expressed the sentiment that reducing felony charges to misdemeanors decreases the morale of law enforcement.

¶ 37. One specific factor was the focus of one of the questions certified to us by the court of appeals: "whether a trial court may take into account the view of law enforcement when considering the public's interest in a plea agreement." The State and Conger argue that to consider the view of law enforcement, as the circuit court did here, runs afoul of *State v. Matson*,[25] which held that a plea agreement between the State and a defendant that included a joint sentencing recommendation was breached by a letter written

[25] *State v. Matson,* 2003 WI App 253, ¶¶ 2–3, 268 Wis. 2d 725, 674 N.W.2d 51.

by a law enforcement officer asking the court to disregard the joint recommendation and instead impose the maximum sentence. The question in *Matson* was whether the defendant, having entered a plea pursuant to the plea agreement, was entitled to resentencing before a different circuit court judge as a result of the breach.

¶ 38. The State and Conger invoke *Matson* for the proposition that a court may not properly consider the view of law enforcement when determining whether to reject a plea pursuant to a plea agreement. The State quotes the following language in *Matson* as support for this proposition: "Because an investigative officer is the investigating arm of the prosecutor's office, principles of fairness and agency require us to bind the investigating officer to the prosecutor's bargain." *Matson,* 268 Wis. 2d, ¶ 23.

¶ 39. The focus of the analysis in *Matson* was on whether the request by the investigating officer that the court impose a maximum sentence should be imputed to the State, which had represented in its negotiations with the defendant and statements to the court its intent to recommend a much lesser sentence. The circuit court in *Matson* had followed the recommendation advocated by the investigating officer and imposed the maximum penalty. The court of appeals reversed the circuit court, noting that "had the letter in this case been written, or the sentiments contained therein uttered, by the district attorney's office, a breach of the plea agreement would have occurred." *Id.,* ¶ 22. The court of appeals reasoned that "the State is obligated to comply with any promises it makes" to induce a guilty plea from a defendant. *Id.,* ¶ 23.

¶ 40. It is possible to draw comparisons between the facts of *Matson* with Conger's situation only by

characterizing the facts in the broadest possible terms: both cases involve consideration by a circuit court of law enforcement representatives' views on a plea agreement. Such an analysis is not helpful because it strips all of the relevant facts from both cases. *Matson* did not stand for the proposition that law enforcement views can never be properly considered by a court; rather, it dealt with a specific situation where a plea agreement had been reached, a plea had indeed been entered, and the expectations of both the State and the defendant were that the court would be presented a joint sentencing recommendation. The overarching question before the court of appeals was whether the sentencing was fair given the competing sentencing recommendations and the defendant's much different expectation when the plea had been entered; the specific question on which that determination turned was one of agency: in other words, was the investigating officer in effect an agent of the State?

¶ 41. When the issues addressed in these cases are stated precisely, the differences become apparent. Most significantly, considering law enforcement representatives' views as a factor in determining whether to reject the proposed plea agreement is quite a different matter from allowing law enforcement to slip a harsher sentencing recommendation to a court while the prosecutor uses a lesser sentencing recommendation to procure a plea from the defendant. Here, the consideration of law enforcement's views was only one factor, of several noted in the record, in the circuit court's decision, and it was not obtained after the prosecution had secured the defendant's plea. *Matson* is good law, but it has no application here.

██ ██
¶ 42. The court in this case did a very thorough job of examining the facts. As noted above, over the course of multiple hearings, the court questioned the parties closely and carefully in order to have a complete understanding of the facts. While it would be inappropriate for a court to deny a motion to amend as part of a plea agreement on the grounds that it gives law enforcement veto power over plea agreements or on the grounds that it followed a policy that amendments from felonies to misdemeanors were never approved, those circumstances are not in the record before us in this case.[26] The record shows that the circuit court was troubled by the facts of this particular case from the first plea hearing. This was not a situation where a plea agreement to which the court was initially receptive was nixed by law enforcement; rather, here, it was clear that the circuit court was going to reject the plea agreement on all the facts before it even *before* it knew the view of the law enforcement unit. The view of the law enforcement unit was one of four facts the circuit court sought to learn about before ruling on the motion;

[26] It is true that the circuit court made the statement, at the third plea hearing, "The Court believes that the public interest is not served by the reduction from felonies to misdemeanors." This statement, standing alone, can not be an appropriate standard for evaluating plea agreements. However, given the full context of the transcripts of the three hearings, we are satisfied that the circuit court was not in actuality applying such a blanket rule about amendments from felonies to misdemeanors, because it focused repeatedly on several facts in the case. We note that applying a blanket rule would not require three hearings; the circuit court could easily have denied the agreement at the first hearing as soon as it was informed of the nature of the amendment sought, if it indeed had such a blanket rule.

after three of those questions were answered, but before the question about the MEG Unit was answered, the court said its answer was "still no."

¶ 43. As we have discussed, the circuit court properly applied the law as set forth in *Kenyon,* which was cited in the circuit court's ruling. Given that the court made a detailed record over the course of three hearings as to the factors it considered significant, and given that those factors were appropriate to the analysis, we determine that the circuit court had the power to reject the plea agreement on its holding that it was not in the public interest. The circuit court did not erroneously exercise its discretion.

### C. Whether the Circuit Court Erred in Denying Conger's Motion to Recuse

¶ 44. As noted above, Conger moved to recuse the circuit court after it denied his motion to amend the charges. The circuit court denied that motion as well. Conger asks on appeal that the circuit court's denial of that motion be reversed. We conclude that the circuit court did not err in denying Conger's motion to recuse because rejecting a plea agreement on the grounds that it is not in the public interest does not fall under any of the rules that automatically require a court's recusal from further participation in a case.

██ ██

¶ 45. Conger argues that the court's recusal was necessary once it rejected the plea agreement for the following reasons. First, Wis. Stat. § 757.19(2)(b) requires recusal when a judge is a party to a case, and Conger contends that the court, in rejecting the plea, essentially placed itself in the role of prosecutor, representing a party adverse to the defendant. Second, Wis.

Stat. § 757.19(2)(f) requires recusal when a judge has "a significant . . . personal interest" in the outcome of a case, and Conger argues that the circuit court, in rejecting the plea, has stated such an interest. The State disagrees, as does counsel for Judge Grimm, and each argues that rejecting a plea agreement neither constitutes becoming a party nor states a significant personal interest in a case. The presumption that judges are free from bias and prejudice is well established. *State v. Santana*, 220 Wis. 2d 674, 684, 584 N.W.2d 151 (Ct. App. 1998). Counsel for Judge Grimm rightly points out that given that the circuit court has a duty under the law to supervise plea agreements, it would put courts in an untenable position to create a rule that rejecting a plea automatically creates grounds for recusal. We see nothing in a court's rejection of a plea in general, and nothing in this particular record, that persuades us that in rejecting the plea agreement the court relinquished its ability to be the impartial and detached magistrate to which Conger is constitutionally and statutorily entitled. Therefore, the circuit court did not err when it denied Conger's motion to recuse; that denial was entirely proper.

¶ 46. There is, however, a twist in this case that gives us some concern. The configuration of parties in this case was altered when the court of appeals granted the petition for interlocutory appeal. As noted above, in its May 23, 2008, order granting Conger's petition for interlocutory appeal, the court of appeals noted "the unique situation presented" and "agree[d] with the State that input from the circuit court [would] be beneficial."[27] It therefore directed Judge Grimm "to

---

[27] Because the State and Conger are allies rather than adversaries on this issue, the court did not have the benefit of

arrange representation through the Director of State Courts and file a response . . . ." In a June 10, 2008, order setting forth a briefing schedule, the court of appeals stated, "Conger and the State have been designated as an appellant and a co-appellant respectively. The circuit court judge, the Honorable Peter L. Grimm, has been designated as an intervenor-respondent."

¶ 47. This designation has raised the potential for a new motion for recusal to be made on remand on the grounds that Judge Grimm has, in the course of the appeal, become a party. If Judge Grimm has become a party to this action, then his recusal would appear to be governed by Wis. Stat. § 757.19(2)(b) (requiring disqualification from any civil or criminal action or proceeding when a judge is a party). On the record before us, we are unable to dispose of the question of Judge Grimm's status as a party in this matter. The record before us does not include any motions filed by any party requesting that Judge Grimm be permitted to intervene in this matter.[28] We do not know whether the court of appeals made the designation on the basis of

the ordinary testing of arguments by opposing parties. *See Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 28 (1981) ("[O]ur adversary system presupposes[] [that] accurate and just results are most likely to be obtained through the equal contest of opposed interests . . . .").

[28] The State, in its reply brief, says, "In its response to Defendant Conger's petition for leave to appeal, the State suggested that because both the State and Defendant Conger sought reversal of Judge Grimm's rejection of the proposed plea agreement, Judge Grimm's position should be represented by counsel outside the Department of Justice." Conger's petition for leave to appeal is in the record, but the State's response to it is not.

698

Wis. Stat. § 803.03, Wis. Stat. § 803.09, or some other statute.[29] Nor does the court of appeals explain its rationale for its decision to order Judge Grimm to obtain representation and for its designation of the respective parties as appellant, co-appellant, and intervenor-respondent in the certification of appeal to this court. Of course, the fact that Judge Grimm is represented by counsel does not necessarily make him a party. As the State suggests in its reply brief to this court, "Judge Grimm's position may be better construed as an 'amicus curiae' rather than as 'a party' in a case over which the judge presided," citing analogous cases from the United States Supreme Court. This argument bears developing both because it is relevant to the immediate question of recusal and because it is a question that may arise again in the future. Because the record before us is incomplete, we cannot make that determination. We therefore remand to the court of appeals the issue of whether, as a matter of law, Judge Grimm has now become a party or amicus. We then expect a remand to the circuit court for a decision under Wis. Stat. § 757.19(2) in regard to recusal.

## III. CONCLUSION

¶ 48. The first two questions presented by this case are answered by Wis. Stat. § 971.29 (which permits amendment of the charge without judicial approval

---

[29] Wis. Stat. § 803.03(1)(a) states that "[a] person who is subject to service of process shall be joined as a party in the action if . . . in the person's absence complete relief cannot be accorded among those already parties[.]"

Wis. Stat. § 803.09(2) states in part that "[u]pon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common."

only prior to arraignment) and established precedent concerning the circuit court's inherent authority to reject a plea that is not in the public interest. Thus, a circuit court must review a plea agreement independently and may, if it appropriately exercises its discretion, reject any plea agreement that does not, in its view, serve the public interest. That review is analogous to the court's independent determination that a factual basis exists for the plea and its independent determination pursuant to Wis. Stat. § 971.08(1) that the plea is made knowingly, intelligently, and voluntarily; such independent determinations are safeguards built into our system to protect the integrity of the plea process. When a court determines independently whether a plea is in the public interest, it is no more a reflection on the prosecutor's integrity or judgment than when it determines independently that a factual basis supports the plea.

¶ 49. As for the factors a court may consider when it makes that independent determination, we reiterate, as other courts have done, that the public interest is a consideration that is not capable of precise outlines. Accordingly, the factors that a court may weigh when defining the public interest involved will vary from case to case. One appropriate factor among many may well be the viewpoint of law enforcement; a court's consideration of that factor in its analysis does not automatically invalidate its ultimate decision with regard to the plea.

¶ 50. Finally, in answer to the questions about required recusal, we conclude that a court's rejection of a plea does not in and of itself become a "personal interest in the outcome of the matter," and Wis. Stat. § 757.19(2)(f) is not implicated here. We are unable to ascertain on this record whether in the course of the

appeal Judge Grimm has become a party to this case, in which event it appears that Wis. Stat. § 757.19(2)(b) would now require his recusal from further participation in this case. Because the record is undeveloped as to that question, we remand to the court of appeals the issue of whether, as a matter of law, Judge Grimm has now become a party or amicus and whether recusal is now required. We then expect a remand to the circuit court for a decision under Wis. Stat. § 757.19(2).

¶ 51. We therefore affirm the order of the circuit court denying the motion to amend the information pursuant to the plea agreement. The order denying Conger's motion seeking the court's recusal was also properly denied. However, we remand to the court of appeals the issue of whether Judge Grimm has now become a party or amicus. We then expect a remand to the circuit court for a decision under Wis. Stat. § 757.19(2) in regard to recusal.

*By the Court.—Order denying motion to amend affirmed; order denying motion to recuse affirmed; order of the court of appeals designating the circuit court an intervenor-respondent remanded to the court of appeals for further proceedings.*

¶ 52. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join the majority opinion. I write separately for two reasons:

¶ 53. First, to underscore that although the majority opinion affirms a circuit court's de novo determination whether to reject a plea agreement involving amendment or dismissal of initial charges, the majority opinion appropriately stresses the significant weight a circuit court should give to the district attorney's recommendation and evaluation of the public interest, as encompassed in the plea agreement.

701

¶ 54. Second, to respond to the dissent, which laments that the court has expanded the power of the judiciary and has crossed "a well understood[] line separating a core power of the executive branch—the power to prosecute criminal actions—from the power of the judiciary to adjudicate those actions." Dissent, ¶ 97. Somewhat contradictorily, the dissent acknowledges that the line separating judicial and executive powers is "indistinct." *Id.*

¶ 55. The dissent acknowledges that courts may review amendments to initial charges to protect defendants from prejudice. Dissent, ¶ 141. Beyond this, the dissent offers no standard of review to guide circuit courts in deciding whether to reject a proposed plea agreement involving the amendment or dismissal of charges. The only answer that can be deciphered from the dissent is that there is no court review of a district attorney's decision to amend or dismiss a charge. According to the dissent, district attorneys have the exclusive authority to determine whether a plea agreement involving amendment or dismissal of initial charges is in the public interest.

¶ 56. How can that be? Once charges are filed in court, the district attorney is the attorney for the State, which is a party to the criminal proceedings.[1] Placing unlimited, non-reviewable, exclusive power in the district attorney to amend or discharge charges, as the dissent proposes, undermines the deliberative process of the circuit court in deciding cases and circumvents the judiciary's duty to administer justice impartially and independently.

---

[1] *See State v. Stenklyft*, 2005 WI 71, ¶ 106, 281 Wis. 2d 484, 697 N.W.2d 769 (Abrahamson, C.J., concurring in part & dissenting in part) (citations omitted).

¶ 57. Wisconsin's constitutional history, the statu-
tory history, and long-standing precedents of this court
demonstrate that a circuit court's evaluation of a plea
agreement involving amendment or dismissal of initial
charges is not in derogation of the separation of powers
doctrine but rather maintains proper checks and bal-
ances between government branches and protects the
public interest.

I

¶ 58. I conclude, like the majority opinion and in
contrast to the dissent, that courts have the power to
review the discretion of district attorneys in amending
or dismissing a charge. Indeed no one disputes this rule
of law—not the State, not the defendant, not the
amicus.[2] Only the dissent disputes the rule of law. Yet
judicial review is a safety valve needed to assure fair-
ness and to promote trust in the legal system.

¶ 59. The question before the court is what stan-
dard a circuit court should use in deciding whether to
reject a proposed plea agreement involving the amend-
ment or dismissal of charges.[3]

¶ 60. My initial view was that the circuit court
should review the plea agreement to determine whether
the prosecutor erroneously exercised his or her discre-
tion.[4] In other words, I thought that the circuit court

---

[2] Non-party brief of Ben Kempinen, Clinical Professor and
Director, Prosecution Project, Frank J. Remington Center,
University of Wisconsin Law School, Madison, Wisconsin.

[3] As stated by the court of appeals certification, the first issue
presented for review is "What is the trial court's scope of review
when deciding whether to accept or reject a plea agreement?"

[4] As this court has explained, prosecutors have great dis-
cretion in determining whether to commence a prosecution and

703

should review the prosecutor's decision about changing the charges in a plea agreement by asking whether the prosecutor erroneously exercised his or her discretion. Allowing the prosecutor substantial independence in amending or dismissing charges once the case is before the court is proper because the prosecutor has investigated the offense and has more information than the circuit court.

¶ 61. Nevertheless, I join the majority opinion because although the majority opinion does not adopt the erroneous exercise of discretion standard, the majority stresses the significant weight a circuit court should give to the prosecutor's recommendations as encompassed in a plea agreement.

¶ 62. Wisconsin law has long recognized, and the majority opinion here maintains, that district attorneys are "quasi-judicial" officers, engaged in sharing responsibility with the courts to assure that justice is done. Majority op., ¶ 19 (quoting *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 28, 271 Wis. 2d 633, 681 N.W.2d 110). The majority opinion calls attention to the fact that "prosecutor[s] . . . are afforded necessarily wide deference to do their jobs." Majority op., ¶ 19. The majority opinion underscores "the public interest in allowing the prosecutor sufficient freedom to exercise his [or her] legitimate discretion, to employ to the best effect his [or her] experience and training, and to make the subjective judgment implicit in the broad

are generally accountable to the people, and not to courts, for how they exercise that power, but that power has bounds; the power must be balanced against the need to avoid arbitrary, discriminatory, or oppressive results. *State v. Karpinski,* 92 Wis. 2d 599, 607–08, 285 N.W.2d 729 (1979).

grant of authority under sec. 59.47, Stats." Majority op., ¶ 26 (quoting *State v. Kenyon,* 85 Wis. 2d 36, 47, 270 N.W.2d 160 (1978)).

¶ 63. Thus the majority opinion is sufficiently deferential to the district attorney to preserve the office's necessary autonomy and is flexible enough to allow a circuit court to reject a plea agreement that is not in the public interest. The majority recognizes that the prosecutor's free exercise of authorized discretion is in itself a valuable public interest.[5]

¶ 64. Thus, contrary to the dissent's anxiety that the majority opinion will lead to second-guessing of circuit courts' approval of plea agreements by unspecified "third parties,"[6] and that the majority's weighting of the prosecutor's recommendation is a "fig leaf,"[7] I take the majority seriously and at its word when it credits the recommendation and reasoning of prosecutors entering into plea agreements.[8] Today's decision maintains the circuit court's established and constitutional role.

---

[5] *See* majority op., ¶ 31 (proper weighting of the prosecutor's recommendation and reasoning "reflects the court's interest in honoring the public interest in providing a prosecutor freedom to exercise the discretion that his or her position authorizes.").

[6] Dissent, ¶ 158.

[7] *Id.,* ¶ 157.

[8] In addition to the American Bar Association's Standard 14–1.8, which the majority cites with approval at ¶ 34 for its discussion of factors bearing on the circuit court's evaluation of the public interest, the majority's determination is in keeping with the ABA's Standard 14–1.1(b), regarding receiving and acting on a plea: "[A]ppropriate consideration should be given to the views of the parties, the interests of the victims and the interest of the public in the effective administration of justice."

## II

¶ 65. Simply put, it is peculiarly the province of all Wisconsin courts, and especially this Court, to interpret our state constitution and to "say what the law is."[9] The majority decision in this case preserves the respective roles of the courts and the district attorney. The dissent's anxiety about a violation of the separation of powers is unfounded.[10]

¶ 66. The present case involves the power of a circuit court to reject a district attorney's request to amend or dismiss a charge that has been filed.

¶ 67. Stridently objecting to the majority opinion as a judicial usurpation of executive power, the dissent spins a long, winding tale about the powers of district attorneys and courts, citing constitutional, statutory,

---

[9] *State ex rel. Wis. Senate v. Thompson,* 144 Wis. 2d 429, 436, 424 N.W.2d 385 (1988) ("We deem it to be this court's duty to resolve disputes regarding the constitutional functions of different branches of state government; we may not avoid this duty simply because one or both parties are coordinate branches of government.").

[10] The Wisconsin Constitution vests executive power in the governor and legislative power in the two houses of the legislature. The judicial power rests in a unified court system. This division of responsibility evinces the separation of powers doctrine in our government. *Stenklyft,* 281 Wis. 2d 484, ¶ 88 (Abrahamson, C.J., concurring in part & dissenting in part).

Although the principles of the separation of powers are easily stated, "the boundaries that separate the powers of the three branches are shadowy and not well defined. It is the duty of the court to define them, and see that they are respected." *Stenklyft,* 281 Wis. 2d 484, ¶ 88 (Abrahamson, C.J., concurring in part & dissenting in part) (citing *Thoe v. Chicago, Milwaukee & St. Paul Ry. Co.,* 181 Wis. 456, 195 N.W. 407 (1923) (internal quotation marks omitted)).

and case law. And where does the dissent wind up? Agreeing with the majority!

¶ 68. The dissent concludes that "the majority decision is foreshadowed in previous cases." Dissent, ¶ 162.

¶ 69. The dissent takes several approaches (explicit and implicit) in an attempt to refute the majority opinion and the numerous Wisconsin decisions that recognize the power of a trial judge to refuse to accept a proposed plea agreement that involves a reduction or dismissal of charges. None of the dissent's approaches is persuasive.

## 1. The dissent asserts that there exists an "indistinct" but "well understood line separating a core power in the executive branch—the power to prosecute criminal actions from the power of the judiciary to adjudicate those actions." Dissent, ¶ 97.

¶ 70. **Response:** The dissent fails to cite to any authority establishing this "well understood line" or establishing a "core executive power to prosecute criminal actions." Indeed, the well-accepted law is that the district attorney has no "core" powers, or any other powers, other than what the statutes provide.

¶ 71. The district attorney is mentioned in the Wisconsin Constitution in Article VI, Section 4, (1)(a), (1)(c), and (5). The method of selection (election), term of office, and procedures to fill vacancies are set forth; nothing more. Absent constitutional provisions, the powers of the office of district attorney have been set forth by the legislature and have evolved over the years.

¶ 72. The court has stated that "the position of district attorney, though constitutional, was not one of inherent powers, but was answerable to specific directions of the legislature."[11]

¶ 73. Circuit courts, on the other hand, have the power to adjudicate and have inherent and implicit power in performing their functions.[12]

## 2. The dissent asserts that the district attorney has broad discretion to determine whether to file charges, that is, to initiate a prosecution. Dissent, ¶¶ 116, 132–35.

¶ 74. **Response**: True. *See* dissent, ¶¶ 116–17 (describing *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 166 N.W.2d 255 (1969) (no writ of mandamus lies to compel district attorney to conduct an inquest)).

¶ 75. But this case does not involve the district attorney's power to decide whether to file a charge. The majority opinion does not interfere with the district attorney's decisionmaking regarding whether and what to charge.

---

[11] *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 380, 166 N.W.2d 255 (1969).

Similarly, the powers of the attorney general are circumscribed by statute, although he or she is a constitutional officer. *State of Wisconsin v. City of Oak Creek,* 2000 WI 9, ¶¶ 15–16, 20, 232 Wis. 2d 612, 605 N.W.2d 526. "[U]nless the power to [bring] a specific action is granted by law, the office of the attorney general is powerless to act." *Id.* at ¶ 22 (second brackets in original). This is settled law that does not gravely undermine the separation of powers; neither does maintaining long-established checks and balances on the discretionary authority of district attorneys around the state.

[12] *See State v. Cannon,* 196 Wis. 534, 221 N.W. 603 (1928).

¶ 76. The present case involves the power of the court and district attorney once the district attorney has decided whether and what to charge. When charges are filed, the State is a party to the action and is represented before the court by the district attorney.

¶ 77. More importantly, however, the power to file charges, to initiate prosecution, is not the exclusive power of the district attorney. Rather, it is a power shared by the district attorney and the judiciary, as the dissent must concede. Dissent, ¶ 135.

¶ 78. When the Wisconsin Constitution was adopted, and until the present day, the district attorney did not have exclusive power to determine whether to file charges, that is, whether to initiate prosecution. A trial court has power to initiate a charge when the district attorney does not.

¶ 79. Twenty-first century lawyers view the district attorney as *the* public prosecutor, but historically the victim, not the state, was the prosecutor.[13] Before the adoption of the Constitution (and thereafter),[14] judges were authorized to initiate criminal prosecu-

---

[13] For a history of district attorneys and their powers in Wisconsin, see *State ex rel. Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 401 N.W.2d 782 (1987) (overruled by *State v. Unnamed Defendant,* 150 Wis. 2d 352, 365–67, 441 N.W.2d 696 (1989)); *State v. Unnamed Defendant,* 150 Wis. 2d 352, 441 N.W.2d 696 (1989); Frank J. Remington & Wayne A. Logan, *Frank Miller and the Decision to Prosecute,* 69 Wash. U.L.Q. 159 (1991); Wayne A. Logan, Comment, *A Proposed Check on the Charging Discretion of Wisconsin Prosecutors,* 1990 Wis. L. Rev. 1695; Samuel Becker, *Judicial Scrutiny of Prosecutorial Discretion in the Decision Not to File a Complaint,* 71 Marq. L. Rev. 749 (1988).

[14] The early statutory history is relevant because in interpreting the Wisconsin constitution courts examine (1) the plain meaning of the words in the context used; (2) the historical

tions.[15] "Doubtless, at the time of the state's origin . . . magistrates played a central role in initiating prosecutions, in contrast to the ambiguous role of district attorneys."[16]

analysis of the constitutional debates and the practices in existence in 1848; and (3) the earliest interpretations of the section by the legislature as manifested in the first law passed following adoption of the constitution. *State v. Beno,* 116 Wis. 2d 122, 136–37, 341 N.W.2d 668 (1984).

For state constitutional interpretation, see also *Borgnis v. Falk Co.,* 147 Wis. 327, 349–50, 133 N.W. 209 (1911) ("Where there is no express command or prohibition, but only general language or policy to be considered, the conditions prevailing at the time of [the constitution's] adoption must have their due weight; but the changed social, economic, and governmental constitutions and ideals of the time, as well as the problems which the changes have produced, must also logically enter into the consideration, and become influential factors in the settlement of problems of construction and interpretation."). *See also B.F. Sturtevant Co. v. Indus. Comm'n,* 186 Wis. 10, 19, 202 N.W. 324 (1927); *In re Village of Chenequa,* 197 Wis. 163, 171, 221 N.W. 856 (1928).

[15] *Unnamed Defendant,* 150 Wis. 2d at 363.

[16] Wayne A. Logan, Comment, *A Proposed Check on the Charging Discretion of Wisconsin Prosecutors,* 1990 Wis. L. Rev. 1695, 1710.

1878 Rev. Stat. Section 4653 granted the district attorney the power not to file an information, but the power was subject to the trial court's approval. The trial court could direct the district attorney to file the proper information and bring the case to trial:

The district attorney of the proper county shall inquire into and make full examination of all facts and circumstances connected with any case of preliminary examination, as provided by law, touching the commission of any offense whereon the offender shall have been committed to jail, or become recognized or held to bail, and to file an information setting forth the crime committed, according to the facts ascertained on such examination, and from

¶ 80. It was not until 1945 that district attorneys were given explicit statutory authority, coextensive with the powers of the courts, to issue criminal complaints.[17] Only in 1969 did the legislature give district attorneys the primary (but not exclusive) statutory authority to charge criminal offenses.[18]

¶ 81. While the 1969 revision of the criminal code gave the district attorney "a greater voice in the initiating of criminal proceedings,"[19] circuit courts retained a role in the charging function. Wisconsin Stat. § 968.02(3) (1969)[20] permits circuit court judges to initiate prosecutions if the district attorney is unavail-

the written testimony taken thereon, whether it be the offense charged in the complaint on which the examination was had or not; but if the district attorney shall determine in any such case that an information ought not to be filed, he shall make, subscribe and file with the clerk of the court, a statement in writing, containing his reasons, in fact and in law, for not filing an information in such case; such statement shall be filed at and during the term of the court at which the offender shall be held for appearance for trial; and *in such case the court shall examine such statement, together with the evidence filed in the case, and if, upon such examination, the court shall not be satisfied with such statement, the district attorney shall be directed by the court to file the proper information and bring the case to trial* (emphasis added).

For a discussion of the origin and early history of magistrates issuing criminal complaints and exercising a judicial, rather than an administrative or ministerial function, see *State ex rel. Long v. Keyes,* 75 Wis. 288, 44 N.W. 13 (1889).

[17] Wis. Stat. § 361.02(1) (1945); *see also* Samuel Becker, *Judicial Scrutiny of Prosecutorial Discretion in the Decision Not to File a Complaint,* 71 Marq. L. Rev. 749, 756, 766.

[18] *Unnamed Defendant,* 150 Wis. 2d at 363.

[19] Wis. Stat. Ann. § 968.02, Comments—L. 1969, c. 255 (West 2007).

[20] *See also* Wis. Stat. § 968.02(3) (2007–08).

able or refuses to issue a complaint. Similarly, Wis. Stat. § 968.26 (1969) permits circuit court judges to issue criminal complaints.[21]

¶ 82. During the nineteenth and twentieth centuries the powers of the district attorney increased, but the power of the courts in initiating prosecutions has continued to be recognized by the legislature and the courts as a judicial function.[22]

¶ 83. Thus initiating criminal charges is not an exclusive function of the district attorney. The district attorney shares the power to initiate criminal charges with the judiciary.

### 3. The dissent discounts our prior cases that conclude a trial court may reject a plea and may reject a plea agreement that does not serve the public interest.

¶ 84. **Response:** Case law recognizes that a trial court has inherent and statutory power to reject a plea and in particular to reject a plea agreement that does not serve the public interest. The dissent asks this court to overturn precedent.

¶ 85. At least as early as 1945, the Wisconsin Supreme Court has declared that "[t]he right of the court to refuse to accept a plea is an inherent power of all criminal courts." *State v. La Pean,* 247 Wis. 302, 308, 19 N.W.2d 289 (1945).

---

[21] *See also* Wis. Stat. § 968.26 (2007–08). *See also* § 2, ch. 369, Territorial Stats. of Wis. (1839).

[22] The "John Doe" statute authorizing courts to issue a complaint upon finding probable cause has been in force since 1849. *See* Wis. Stat. § 968.26 (2007–08); *Unnamed Defendant,* 150 Wis. 2d at 363; Frank Remington & Wayne A. Logan, *Frank Miller and the Decision to Prosecute,* 69 Wash. U.L.Q. 159, 164 (1991).

¶ 86. A recurring theme of Wisconsin cases is that a trial judge may refuse to accept a proposed plea agreement that involves a reduction or dismissal of charges.

¶ 87. The dissent urges that the court not abide by these cases. The dissent at ¶ 125 objects that "*Guinther*[23] represents nearly open-ended authority for courts to pursue prosecution over the opposition of executive branch officials." The dissent further seeks to marginalize and avoid the law of *Guinther* on historical and ideological bases. *See* dissent, ¶¶ 101–115, 125.

¶ 88. The dissent does not want to follow *State v. Kenyon,* 85 Wis. 2d 36, 44–45, 270 N.W.2d 160 (1978). *See* dissent, ¶¶ 118–125. The *Kenyon* court, after examining prior cases (including *Guinther*), concluded that once a case is filed, the trial court has the duty to consider the public interest in determining whether to grant or deny a district attorney's motion to dismiss the case. The district attorney's determination whether to initiate a criminal prosecution is "almost limitless," but once the "jurisdiction of the court is invoked by the commencement of a criminal proceeding, the court can exercise the discretion described in *Guinther, supra.*"[24] If, as *Kenyon* holds, a trial court has the power to deny a district attorney's motion to dismiss a case, the trial court surely has the lesser power to deny a district attorney's motion to amend or dismiss a charge.

¶ 89. The dissent is dismissive of *State v. Comstock,* 168 Wis. 2d 915, 927 & n.11, 485 N.W.2d 354 (1992). *See* dissent, ¶¶ 149–50. The *Comstock* court stated that a circuit court must satisfy itself that the

---

[23] *Guinther v. City of* Milwaukee, 217 Wis. 334, 339–40, 258 N.W. 865 (1935).

[24] *State v. Kenyon,* 85 Wis. 2d 36, 45, 270 N.W.2d 160 (1978).

713

amendments to a charge are in the public interest: "A circuit court may, as this court has written, ask sufficient questions, including the prosecutor's reasons for entering the plea agreement, to satisfy itself of the wisdom of accepting the plea to reduced charges. This is the law of longstanding in this state" (citations omitted). *Comstock,* 168 Wis. 2d at 927.

¶ 90. The dissent is critical of the majority's adhering to *State v. Lloyd,* 104 Wis. 2d 49, 310 N.W.2d 617 (Ct. App. 1981). *See* dissent, ¶ 154. In *Lloyd,* the court of appeals approved the circuit court's rejection of a joint motion by the prosecutor and defendant to dismiss the information; the circuit court appointed a special prosecutor to prosecute the case.

¶ 91. The dissent's examination of Wis. Stat. § 971.29(1) and related statutes yields no plain text interpretation or legislative history that contravenes the majority opinion's interpretation of § 971.29(1) as requiring court approval for a prosecutor's amendment or dismissal of a charge. *See* dissent, ¶¶ 136–142. So, the dissent resorts to conclusory statements about the statutes to support its view. *See* dissent, ¶ 142. An underlying premise of Wis. Stat. § 971.29, which the majority identifies, is that the circuit court retains authority to approve or disapprove amendments, limited by Wis. Stat. § 971.29(1), which allows amendments without leave of the court when they are brought "prior to arraignment."[25]

¶ 92. Even a brief review of the history of the relative powers of the district attorney and trial court in criminal cases thus demonstrates the basic point that

---

[25] *Wagner v. State,* 60 Wis. 2d 722, 726, 211 N.W.2d 449 (1973), which the dissent cites, supports this proposition: "the trial court may allow amendment" or "may reject a proposed amendment."

there are historically shared powers between the executive and judicial branch relating to charging and amending or dismissing charges. The present decision does not, as the dissent claims, embody a novel departure from past cases, impose a new balance of power between prosecutors and trial courts, or cross an "indistinct," unidentified threshold altering the well-established allocation of powers and duties of the district attorney and judiciary.

¶ 93. In light of the constitutional and legislative histories and the precedents of this court interpreting the respective powers of the district attorney and the trial court, the majority opinion's conclusion that a circuit court may reject a district attorney's amendment or dismissal of a charge does not violate the separation of powers doctrine as it has existed in this state for over 162 years.

¶ 94. For the reasons set forth, I write separately.

¶ 95. DAVID T. PROSSER, J. (*dissenting*). From time to time, the Wisconsin Supreme Court is required to address the proper role of the judiciary in our system of government. The issue may arise in cases or rules. When it does, the court may face profound questions about the separation of powers.

¶ 96. It should come as no surprise that the court, operating without an effective check, has often decided these questions by expanding the power of the judiciary at the expense of other branches of government. This case is the latest example of that phenomenon.

¶ 97. In my view, the present decision crosses an indistinct, but well understood, line separating a core power of the executive branch—the power to prosecute criminal actions—from the power of the judicial branch to adjudicate those actions. I fear that what today may

be viewed as a popular pronouncement that is "tough on crime," will tomorrow lead to consequences that compromise the impartiality of circuit courts. For these and other reasons, I respectfully dissent.

I

¶ 98. The court reaches the following conclusions:

(A) "[A] circuit court must review a plea agreement independently and may, if it appropriately exercises its discretion, reject any plea agreement that does not, in its view, serve the public interest." Majority op., ¶¶ 3, 48.

(B) "[D]eciding whether to reject a plea agreement is squarely within the court's authority; to hold otherwise would permit encroachment by the executive branch into the realm that has historically, in Wisconsin, been that of the judicial branch." *Id.*, ¶ 24.

(C) "Our approach vests authority in the circuit court to determine what pleas are in the public interest without permitting the court to intrude on the authority of the prosecutor to decide what charges to file or whether to file charges in the first instance." *Id.*, ¶ 26.

(D) "We ... hold that a circuit court may, in an appropriate exercise of discretion, reject a plea agreement that it deems not to be in the public interest." *Id.*, ¶ 27.

¶ 99. The court bases these conclusions on Wis. Stat. § 971.29 and "the circuit court's inherent authority to reject a plea that is not in the public interest." *Id.*, ¶ 3.

¶ 100. These bases should be carefully examined, beginning with the court's "inherent authority."

## II

¶ 101. On September 27, 1933, Dr. Hans Luther, the German ambassador to the United States, was scheduled to appear at the Milwaukee Club on North Jefferson Street in downtown Milwaukee, directly across from the Pfister Hotel.[1] Luther, who had recently been named to his post by German Chancellor Adolf Hitler, was expected to arrive at the Club at 1:00 pm.

¶ 102. Several hours before the ambassador's arrival, groups of people representing various organizations opposed to German Fascism began to gather near the entrance to the Club. The organizations included The German United Front Against Fascism, The Jewish Committee Against Fascism, the International Defense, The John Reed Club, the Communist Party, and the Young Communist League. A number of persons in the crowd carried signs, one bearing the inscription, "Luther, agent of the bloody Hitler." Another read: "Roosevelt, where is the unemployment insurance you promised the workers?"

¶ 103. The assemblage was called to order by Lillian Husa, who introduced Ivan Koss, Frederick Bassett, and Harry Yaris, who spoke to the crowd of approximately 200 that had spilled into the street and effectively obstructed entry to the Club. All four were later prosecuted criminally for unlawful assembly and riot. *See Koss v. State,* 217 Wis. 325, 327–28, 258 N.W. 860 (1935).

---

[1] The facts set out in paragraphs 101–115 are taken from *Koss v. State,* 217 Wis. 325, 258 N.W. 860 (1935); *Guinther v. City of Milwaukee,* 217 Wis. 334, 258 N.W. 865 (1935); and the briefs in both cases located at the Wisconsin State Law Library, Madison, Wisconsin.

¶ 104. In time, police officers began efforts to disperse the crowd. They met with resistance. According to one account, the crowd formed a tight circle, with interlocked arms, to protect the speakers. After one of the speakers was arrested, a fight broke out that lasted about 25 minutes. Police arrested at least 16 additional persons, including Walter Guinther, who were engaged in the commotion and melee. The 16 were taken into custody, charged with disorderly conduct under a city ordinance, and brought before the district court the following day. Upon motion of the defendants, the case was continued until October 5.

¶ 105. On that day, the assistant city attorney, Max Raskin, moved to dismiss the action and discharge the defendants. A "friend of the court," Attorney Walter Bender, asked the court to adjourn the case for two weeks to enable the Milwaukee Common Council to decide whether the action should be prosecuted or dismissed.[2]

¶ 106. The district court denied Raskin's motion and set a trial for October 19. When that date arrived, the city attorney's office declined to participate, whereupon the district court asked Attorney George Affeldt to prosecute the action in place of the city attorney. The case proceeded to trial. The defendants refused to take part and were convicted.

¶ 107. The defendants then appealed to municipal court. Circuit Judge G.N. Risjord of Ashland[3] was brought in to preside. On the day of trial, an assistant city attorney moved to dismiss the case and discharge the defendants. After the court denied the motion, Attorney Affeldt was again called upon to prosecute the

[2] The Council did not act.

[3] *State of Wisconsin Blue Book*, p. 402 (1933).

case. The court impaneled a jury, which convicted all 16 defendants of disorderly conduct. After unsuccessful post-conviction motions, the defendants appealed.

¶ 108. In this court, the city and the defendants were aligned against Attorney Affeldt, amicus curiae, whom Judge Risjord had described as, "in a sense . . . a representative of the court." "It may be irregular," the judge added, "but we will thresh that out afterwards."

¶ 109. On appeal, the parties agreed that the disorderly conduct prosecution was a civil case. They also agreed that dismissal of the case could not be effected without an order of the court. The pivotal issues were whether a court could carry forward a prosecution that the city attorney had *not* started and had moved to dismiss, and whether the court had authority to appoint its own counsel to prosecute the case in lieu of a city attorney who refused to act.

¶ 110. This court said the following:

> The city attorney is an important official, but the people, through their representatives in the legislature and the common council, have not placed the fate of efforts to maintain law and order entirely in his hands. Where a public interest is involved, or the interest of a third party, it is the duty of the court to consider those interests in determining whether or not to dismiss an action. In this particular, and for the purpose of the accomplishment of peace and safety, the people have placed upon the police department a considerable responsibility as well as upon the city attorney. Each have a duty. The history of the affairs of the city, as disclosed by the record in the court, shows that ordinarily the different departments coincide in their views, have a common purpose, and that each has a due appreciation of its responsibilities. When it does happen that *a prosecution begun by the police department* is sought to

be terminated by the city attorney, the law places upon the court the duty of deciding whether or not the welfare of the people, the public interest, will be served by sustaining a motion on the part of the city attorney to dismiss, or whether the court should retain jurisdiction and proceed with the trial.

The district court is a court of record. It is vested with exclusive jurisdiction to examine, try, and sentence all offenders against the ordinances of the city. When the people placed this exclusive jurisdiction in the court for the purposes referred to, they necessarily and certainly included with the responsibility, the full and complete power to take all steps necessary to make their requirement effective. This would seem to answer the contentions of the city attorney and the attorney for the plaintiffs in error. But in this connection it may be well to point out a little more specifically that in the enforcement of the city ordinances the police official is required by the people "to cause the public peace to be preserved, and to see that all the laws and ordinances of the city are enforced, and whenever any violation thereof shall come to his knowledge, he shall cause the requisite complaint to be made, and see that the evidence is procured for the successful prosecution of the offender or offenders." Sec. 9771, Milwaukee Code (1914).

The district court as well as the municipal court complied with the requirements exacted of them by the people as expressed in their legislation. The denial of the motion to dismiss is sustained.

*Guinther v. City of Milwaukee*, 217 Wis. 334, 339–40, 258 N.W. 865 (1935) (emphasis added) (citations omitted).

¶ 111. In his argument to the court, the Milwaukee city attorney conceded that in Wisconsin the "plaintiff has no absolute right to the discontinuance of an action once begun." Nonetheless, he explained, Wiscon-

sin developed a rule contrary to common law to meet three well defined situations: (1) cases in which the defendant objected to the dismissal; (2) cases in which the defendant and plaintiff agreed to the dismissal but the rights of third parties would be foreclosed; and (3) cases in which the plaintiff moved for dismissal after a trial had been held and the court was fully apprised in the premises.

¶ 112. Upon examination, it is clear that in *Guinther,* the city attorney did not initiate the civil prosecution; it was commenced by the police. In addition, the dismissal motion was not one objected to by any defendant or considered after a trial.

¶ 113. Thus, the case was one, at best, in which the rights of third parties [the people] would be foreclosed, although the state could have sought criminal charges against the 16 defendants, as it did against others.

¶ 114. In reality, the district court, the municipal court, and the supreme court substituted their view of the "public interest" for the view of the elected socialist government of Milwaukee. The court did not rely on statute for its authority.[4] By the circuit court's own words, the court's appointed prosecutor became "the representative of the court."

¶ 115. The city attorney contended that:

> The people of the city of Milwaukee elect the officers to conduct their business. These officers have certain specified duties. The acts of these officers are always subject to criticism and their policies to disagreement. The differences that arise from such disagreements are properly determined on the political field.

---

[4] Wisconsin Stat. § 355.17 (1933) required a district attorney to prosecute a *criminal* case if the court did not approve the district attorney's motion to dismiss.

The *Guinther* court rejected this contention. It is *Guinther* upon which the majority builds its doctrine of inherent authority.

¶ 116. In 1969 this court decided *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 166 N.W.2d 255 (1969). The court was asked to review a circuit court writ of mandamus directing Milwaukee County District Attorney David Cannon to conduct an inquest, as provided in Wis. Stat. § 966.01 (1967–68). The court ultimately ruled that Cannon had acted within the bounds of his discretion in not ordering an inquest, and it reversed the circuit court. The court, in an opinion by Justice Heffernan, made these observations:

> The district attorney in Wisconsin is a constitutional officer and is endowed with a discretion that approaches the quasi-judicial.
>
> It is clear that in his functions as a prosecutor he has great discretion in determining whether or not to prosecute. There is no obligation or duty upon a district attorney to prosecute all complaints that may be filed with him. While it is his duty to prosecute criminals, it is obvious that a great portion of the power of the state has been placed in his hands for him to use in the furtherance of justice, and this does not per se require prosecution in all cases where there appears to be a violation of the law no matter how trivial. *In general, the district attorney is not answerable to any other officer of the state in respect to the manner in which he exercises those powers. True, he is answerable to the people, for if he fails in his trust he can be recalled or defeated at the polls.* In the event he wilfully fails to perform his duties or is involved in crime, he may be suspended from office by the governor and removed for cause. These, however, are political remedies that go not to directing the performance of specific duties but rather go to the question of fitness for office.

722

The district attorney's function, in general, is of a discretionary type, the performance of which is not compellable in mandamus. 27 C.J.S., p. 648, sec. 10, *District and Prosecuting Attorneys,* summarizes, correctly we believe, the broad nature of the discretion conferred upon the district attorney:

> *"The prosecuting attorney has wide discretion in the manner in which his duty shall be performed, and such discretion cannot be interfered with by the courts unless he is proceeding, or is about to proceed, without or in excess of jurisdiction.* Thus, except as ordained by law, in the performance of official acts he may use his own discretion without obligation to follow the judgment of others who may offer suggestions; and *his conclusions in the discharge of his official liabilities and responsibilities are not in any wise subservient to the views of the judge as to the handling of the state's case."*

*Kurkierewicz,* 42 Wis. 2d at 378–79 (emphasis added) (citation omitted).

¶ 117. The court identified an exception to the district attorney's broad discretion, namely, *"where the legislature has spoken and directed the performance of duties under particular facts." Id.* at 379 (emphasis added). The court said that Wis. Stat. § 966.01 provided one of those directives. *Id.* at 380. Nonetheless, the court recognized discretion in a district attorney's application of the statute—discretion that District Attorney Cannon had exercised. Consequently, the court reversed, remanding the case to the circuit court with direction to quash the writ. *Id.* at 385.

¶ 118. *Kurkierewicz* did not cite *Guinther. State v. Kenyon,* 85 Wis. 2d 36, 270 N.W.2d 160 (1978), did. *Kenyon* involved a felony prosecution for criminal damage to property. The defendant was accused of deliberately driving his car in such manner as to hit and

damage two groups of motorcycles parked on opposite sides of the street. *Id.* at 38.

¶ 119. At the time the complaint was filed, the defendant was in Texas. He voluntarily returned to Wisconsin for a combined initial appearance and preliminary examination. At the hearing, the court sustained objections to testimony by four motorcycle owners as to the dollar value of the damage. *Id.* at 39. The effect of the court's ruling—in the absence of other witnesses who could testify authoritatively as to the value of the damage—was to jeopardize the felony prosecution, and eventually the court reduced the charge to a misdemeanor. Thus, the district attorney moved to dismiss the complaint without prejudice. *Id.*

¶ 120. The court denied the motion, contending that a dismissal, permitting a new charge to be filed after additional witnesses could be rounded up, would be inconvenient and unfair to the Texas defendant. *Id.* at 40.

¶ 121. In reviewing these facts, this court quoted extensively from *Kurkierewicz.* It also wrote:

> The general rule regarding *nolle prosequi* has been summarized as follows:
>
> "Sec. 514. *Power of prosecuting attorney.*
>
> In the absence of a controlling statute or rule of court, the power to enter a nolle prosequi before the jury is impaneled and sworn lies in the sole discretion of the prosecuting officer. This is true regardless of the attitude of the court." 21 Am. Jur.2d, *Criminal Law,* p. 504, sec. 514 (1965).

*Kenyon,* 85 Wis. 2d at 43.

¶ 122. The court then observed that Wisconsin has "departed from the general rule and has retained in the courts some limitation on the discretion of the

724

district attorney in nolle prosequi" cases.[5] The court cited *Guinther* and quoted several passages including the statement that "the law places upon the court the duty of deciding whether or not the welfare of the people, the public interest, will be served by sustaining a motion . . . *to dismiss,* or whether the court should retain jurisdiction and proceed with this trial." *Kenyon,* 85 Wis. 2d at 44 (emphasis added).

¶ 123. The court summed up the law as follows: "[W]e believe the holding in *Guinther* is clear and conclusive. *Prosecutorial discretion to terminate a pending prosecution in Wisconsin is subject to the independent authority of the trial court to grant or refuse a motion to dismiss 'in the public interest.'* " *Id.* at 45 (emphasis added).

¶ 124. In a footnote, the *Kenyon* court withdrew its once enthusiastic citation of 27 C.J.S., p. 648, sec. 10, explaining that it was "dicta." *Id.* at 45 n.4. Nonetheless, the *Kenyon* court vacated the decision of the circuit court, remanding the case for an explanation of "the public interest." *Id.* at 47, 52–53.

¶ 125. These three cases are cited by the majority as precedent for the court's decision. *Guinther* and *Kenyon* involve requests by prosecutors to *dismiss* cases, albeit for different reasons. The city attorney in *Guinther* did not wish to pursue a prosecution, perhaps for ideological reasons, after the defendants had spent time in jail. The district attorney in *Kenyon* clearly wished to continue a felony prosecution and sought dismissal without prejudice in order to do so. As written, *Guinther* represents nearly open-ended authority

---

[5] Black's defines "nolle prosequi" as "To abandon (a suit or prosecution); to have (a case) dismissed by a *nolle prosequi*." *Black's Law Dictionary* 1070 (7th ed. 1999).

for courts to pursue prosecution over the opposition of executive branch officials. Neither *Guinther* nor *Kenyon* relied on a statutory directive to support its analysis. In fact, these cases place very little reliance on statutes as authority for the court's actions.

¶ 126. The concurrence written by Chief Justice Abrahamson attempts to bolster the majority opinion by asserting that the charging function in criminal cases has always been a power shared by the judicial branch. Although there is historical basis for this assertion, the judicial role in charging decisions has traditionally been grounded in statute,[6] not in a court's "inherent authority." That is why the *Guinther* decision represented a significant break from past precedent.

¶ 127. Before the adoption of the Wisconsin Constitution in 1848 and in the years following adoption until 1945, local judges were vested by statute with the exclusive authority to file complaints in criminal cases *after* examining complainants. *See* Wis. Stat. ch. 369, § 1–2 (1839); Wis. Stat. ch. 145, § 1–2 (1849).

¶ 128. The law was codified, in part, in section 4776 of Sandborn & Berryman Annotated Statutes of Wisconsin 1889:

> Complaint and warrant. Section 4776. Upon complaint made to any such magistrate that a criminal offense has been committed, he shall examine, on oath, the complainant, and any witness produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it

---

[6] In *State ex rel. Long v. Keyes,* 75 Wis. 288, 292, 44 N.W. 13 (1889), the court said: "the powers and duties of said judge in the matter of . . . examination are exclusively statutory, and . . . the statute must be pursued with the utmost strictness." *See* Wis. Stat. § 4776 (1889).

> shall appear that any such offense has been committed, the magistrate shall issue a warrant, reciting the substance of the accusation, and requiring the officer to whom it shall be directed forthwith to take the person accused, and bring him before the said magistrate, or before some other magistrate of the county, to be dealt with according to law; and in the same warrant may require the officer to summon such witnesses as shall be therein named, to appear and give evidence on the examination.[7]

Wis. Stat. ch. 195, § 4776 (1889).

¶ 129. Under section 4776, a complainant such as a police officer or constable would bring a complaint to a magistrate, seeking approval for the filing of a criminal complaint *and* the issuance of an arrest warrant for the accused. This was conceptually similar to a present-day request that a judge issue a warrant for a person's arrest. Although courts unquestionably played a much greater role in the past in the filing of criminal complaints, this fact does not mean that courts had "inherent authority" to perform a truly prosecutorial function. Rather, courts had statutory authority to approve the formal initiation of criminal cases.

¶ 130. The judicial role in prior times is illuminated by section 4809 of the 1889 statutes:

> Change of venue. Section 4809. Whenever any person, charged with having committed any offense, shall be brought before any justice of the peace, or other magistrate, for examination, in accordance with the provisions of this chapter, if such person, before the commencement of the examination, shall make oath that, from prejudice or other cause, he believes that such justice or other magistrate will not decide impar-

---

[7] *See also* Wis. Stat. ch. 194, § 4740 (1889), dealing specifically with justices of the peace.

tially in the matter, then said justice or other magistrate shall transmit all the papers in the case to the nearest justice or other magistrate, qualified by law to conduct the examination, who shall proceed with the examination in the same manner as though said defendant had first been brought before him; but no case shall be so removed after a second adjournment had therein, and only one removal shall be allowed in the same case; but the provisions of this section shall not apply to cities where police justices have exclusive criminal jurisdiction.

Wis. Stat. ch. 195, § 4809 (1889).

¶ 131. Section 4809 signaled that the court was expected to decide probable cause impartially. This expected impartiality was inconsistent with the adversarial role of the prosecutor, and it shows why magistrates were not performing a real prosecutorial function. Nonetheless, section 4809 was a precursor of Wis. Stat. § 971.20, the substitution of judge statute. More than a century ago the legislature recognized that a court's initial involvement in authorizing a complaint could compromise the court's impartiality.

¶ 132. Whatever role courts played in the past in the initiation of criminal proceedings, that role was significantly changed by the 1969 legislature. *See* § 63, ch. 255, Laws of 1969.

¶ 133. In 1969 Wis. Stat. § 968.02(1) was created to read:

Issuance and Filing of Complaints. (1) Except as otherwise provided in this section, *a complaint charging a person with an offense shall be issued only by a district attorney of the county where the crime is alleged to have been committed.* A complaint is issued when it is approved for filing by the district attorney. The approval shall be in the form of a written indorsement on the complaint. (Emphasis added.)

728

The Judicial Council Note to the section read in part:

> Note: This is a change from the present law de-
> signed to give the district attorney a greater voice in the
> initiating of criminal proceedings. Since his is the
> obligation of conducting the prosecution it is believed
> that he should have a voice in the screening out of
> unfounded complaints and in determining if there was
> sufficient evidence to warrant prosecution.

Judicial Council Committee Note, 1969, Wis. Stat.
§ 968.02.

¶ 134. Subsection (3) of Wis. Stat. § 968.02 reads:

> If a district attorney refuses or is unavailable to
> issue a complaint, a county judge may permit the filing
> of a complaint, if he finds there is probable cause to
> believe that the person to be charged has committed
> an offense after conducting a hearing. Where the
> district attorney has refused to issue a complaint, he
> shall be informed of the hearing and may attend. The
> hearing shall be ex parte without the right of cross-
> examination.

Wis. Stat. ch. 255, § 968.02(3) (1969).

¶ 135. Subsection (3) authorizes the judiciary to
check the district attorney in specific circumstances
and, in a sense, its present existence validates the
assertion that the charging decision is a power the
judiciary continues to share with the executive. How-
ever, the concurrence misses the larger point that this
shared power is (1) grounded in statute; and (2) limited
by statute. If the judiciary had "inherent authority" to
initiate prosecutions, the limiting statutes that have
been in place since 1969 would invade judicial power
and might be unconstitutional.

## III

¶ 136. The majority points to Wis. Stat. § 971.29(1) as statutory authority for a circuit court to "reject any plea agreement that does not, in its view, serve the public interest." Majority op., ¶ 3. Section 971.29(1) reads as follows: "(1) A complaint or information may be amended at any time prior to arraignment without leave of the court."

¶ 137. Section 971.29 contains two additional subsections which give subsection (1) context. Subsections (2) and (3) read:

> (2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

> (3) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial.

Wis. Stat. § 971.29(2), (3) (1969).

¶ 138. Section 971.29 was enacted as part of the comprehensive revision of the criminal procedure code in 1969. *See* § 63, ch. 255, Laws of 1969 (effective July 1, 1970). The Judicial Council Note to the section reads:

> NOTE: This section is a restatement of existing law except that it provides that prior to arraignment the district attorney may amend a complaint or information without leave of the court or notice to the other party. Since the district attorney is in charge of the

prosecution he should be permitted to amend his pleadings prior to the time that the defendant has been required to plead.

Judicial Council Committee Note, 1969, Wis. Stat. § 971.29.[8]

¶ 139. "Existing law" was embodied in Wis. Stat. §§ 955.14(4), 955.37, and 957.16(1) and (2).[9] These provisions deal with amendments to correct technical deficiencies in the complaint or subsequent documents, or amendments to reflect "the proofs in all cases where the variance is not material to the merits of the action." Wis. Stat. § 957.16(1) (1967–68).

---

[8] The Council's extensive introductory comment on the revisions did not touch on this section.

[9] Wisconsin Stat. § 955.14(4) (1967–68) reads:

The indictment, information or complaint is sufficient after verdict if it describes the crime in the words of the statute, but other words conveying the same meaning may be used.

Wisconsin Stat. § 955.37 (1967–68) reads:

Mistake in charging crime. When it appears before judgment that a mistake has been made in charging the proper crime, the defendant shall not be discharged if there appears to be good cause to detain him in custody to answer to the crime, and the district attorney may forthwith file an information charging said crime. If the defendant has been charged or arraigned on a complaint, the complaint may be amended.

Wisconsin Stat. § 957.16 (1967–68) reads:

Variances disregarded; amendment. (1) The trial court may allow amendments in case of variance between the complaint or indictment or information and the proofs in all cases where the variance is not material to the merits of the action. After verdict the pleading shall be deemed amended to conform to the proof if no objection based on such variance was timely raised upon the trial.

(2) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial.

¶ 140. The Judicial Council Note does not explain the import of subsection (1) of § 971.29, but the purpose of the subsection was addressed in *Wagner v. State,* 60 Wis. 2d 722, 211 N.W.2d 449 (1973):

> Wisconsin has adopted a more flexible approach to the amending of informations prior to arraignment without leave of the court, and by the court at the trial and even after verdict. In this state no information is to be invalid by reason of any defect or imperfection in matters of form which do not prejudice the defendant. As to even errors or mistakes in an information, the trial court is given authority to order an amendment to cure such defects. The rule in this state is then that *the trial court may allow amendment of an information at any time in the absence of prejudice to the defendant.* It follows that the trial court may reject a proposed amendment to an information.

*Id.* at 726 (emphasis added).

¶ 141. The court's ability to reject an amendment to an information has been explained historically as a means to protect the defendant from prejudice. *See State v. Duda,* 60 Wis. 2d 431, 440–42, 210 N.W.2d 763 (1973); *Whitaker v. State,* 83 Wis. 2d 368, 374, 265 N.W.2d 575 (1978); *State v. Gerard,* 189 Wis. 2d 505, 517 n.9, 525 N.W.2d 718 (1995) ("Prejudice has always been a consideration with regard to amending a charging document."); *State v. Koeppen,* 195 Wis. 2d 117, 123, 536 N.W.2d 386 (Ct. App. 1995).

¶ 142. The majority opinion puts a different spin on § 971.29, changing subsection (1) from a shield to protect defendants to a sword that may be used against them. In truth, subsection (1) says nothing about "the public interest." It was never intended as potent statutory authority for circuit judges to inject themselves into plea agreements.

IV

¶ 143. The present case presents important issues about the separation of powers, but it also exposes an inconsistency in the court's view of the judicial role.

¶ 144. Plea bargaining is an essential component of the administration of criminal justice. *State v. Hampton*, 2004 WI 107, ¶ 26, 274 Wis. 2d 379, 683 N.W.2d 14 (citing *Santobello v.* New York, 404 U.S. 257, 260 (1971)). "Plea bargaining is an accepted and necessary part of the process whereby a good many criminal prosecutions are terminated as a result of a guilty plea." *State ex rel. White v. Gray,* 57 Wis. 2d 17, 21, 203 N.W.2d 638 (1973) (citing *Brady v. United States,* 397 U.S. 742 (1970)).

¶ 145. "A trial judge should not participate in plea bargaining." *State v. Wolfe,* 46 Wis. 2d 478, 487, 175 N.W.2d 216 (1970) (citing *American Bar Association Project on Minimum Standards for Criminal Justice— Pleas of Guilty* (approved draft, 1968), p. 71, sec. 3.3). In *Rahhal v. State,* 52 Wis. 2d 144, 150, 187 N.W.2d 800 (1971), the court observed that "if a trial judge interjects himself into plea bargaining he may become a material witness or otherwise disqualify himself."

¶ 146. The judge cannot be a witness and a finder of fact, too. *Id.* "Trial judges should be careful to abstain from injecting themselves into plea bargaining or influencing the making of a plea. A trial judge may accept a plea bargain, but he should not do the bargaining." *Id.*

¶ 147. In *State v. Erickson,* 53 Wis. 2d 474, 481, 192 N.W.2d 872 (1972), the court said:

Whatever may be the policies or procedures elsewhere, this court has firmly stated that a trial judge is not to participate in plea bargaining. Without repeating the

733

reasons for this court banning what it termed "[t]he vice of judicial participation in the plea bargaining," it is by now crystal clear that . . . "this state has rejected the suggestion that plea bargaining can invade or affect the sentencing process . . . ."

*Id.* (quoting *Farrar v. State,* 52 Wis. 2d 651, 655, 191 N.W.2d 214 (1971)).

¶ 148. The majority opinion emphasizes a different, arguably inconsistent, theme in Wisconsin decisions, namely, the power of a trial judge to refuse to accept a proposed plea bargain that involves a reduction or dismissal of charges.

¶ 149. In *State v. Comstock,* 168 Wis. 2d 915, 927, 485 N.W.2d 354 (1992), the court said:

> Circuit courts in this state may not involve themselves in the plea agreement process and are not bound by any plea agreement between a prosecutor and a defendant. Before permitting a prosecutor to amend charges to allege a less serious offense and before accepting a defendant's guilty or no contest plea to the amended charges, the circuit court must satisfy itself that the amended charges fit the crime and that the amendments are in the public interest. A circuit court may, as this court has written, ask sufficient questions, including the prosecutor's reasons for entering the plea agreement, to satisfy itself of the wisdom of accepting the plea to reduced charges.

¶ 150. The court added: "A circuit court has the power to accept or reject a plea agreement reducing or amending charges; it should consider the public interest in making its decision about the plea agreement and should make a complete record of the plea agreement." *Id.* at 927 n.11.

¶ 151. In a plea colloquy, the court must: "Establish personally that the defendant understands that the

court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement." *State v. Brown,* 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906 (citing *Hampton,* 274 Wis. 2d 379, ¶¶ 20, 69, and *White,* 57 Wis. 2d at 24).

¶ 152. When the court accepts a defendant's plea to a reduced charge or charges but retains complete authority to determine an appropriate sentence for the defendant on the charges, the court is not participating in the plea bargaining process in any sense. When, however, a court rejects on policy grounds a plea agreement that involves the reduction or dismissal of a charge or charges, the court necessarily becomes involved in the prosecution. It is no longer a neutral and detached magistrate. It tips its hand—and the scales of justice—by taking on some of the role of the district attorney in prosecuting the case.

¶ 153. The majority quotes a passage in *United States v. Ammidown,* 497 F.2d 615, 622 (D.C. Cir. 1973): "[T]rial judges are not free to withhold approval of guilty pleas on [public interest grounds] merely because their conception of the public interest differs from that of the prosecuting attorney." Majority op., ¶ 24 n.21. The majority then rejects this principle. *Id.,* ¶ 24. If this dialectic produces an accurate statement of Wisconsin law, the result is not consistent with our ardent proscriptions against judicial participation in plea bargaining.

¶ 154. The majority's decision appears to be a complete vindication of *State v. Lloyd,* 104 Wis. 2d 49, 310 N.W.2d 617 (Ct. App. 1981). In *Lloyd,* the court of appeals applauded *Guinther* and *Kenyon,* approved the circuit court's rejection of a joint motion by the prosecutor and defendant to dismiss the information, ap-

proved the circuit court's appointment of a special prosecutor under inherent authority to prosecute the case, and approved the circuit court's continued participation in the trial and in sentencing. So much for separation of powers. *Id.* at 56–65.

V

¶ 155. Against this background, I look again at the majority's conclusions.

(A) "[A] circuit court must review a plea agreement independently and may, if it appropriately exercises its discretion, reject any plea agreement that does not, in its view, serve the public interest." Majority op., ¶¶ 3, 48.

COMMENT: The majority's use of the word "must" imposes a *duty* upon the circuit court to evaluate proposed plea agreements, especially those involving a charge reduction or dismissal, in light of the circuit court's conception of the public interest. This is grounded on the *Guinther* court's references to a court's "duty." *Guinther*, 217 Wis. at 339. This revised formulation of a circuit court's authority and duty is quite different from the court's comment in *Salters v. State,* 52 Wis. 2d 708, 715, 191 N.W.2d 19 (1971): "In cases in which the prosecutor has moved to reduce the charge in the complaint it is . . . proper, *although not mandatory,* for the court to ascertain why the charge was reduced." (Emphasis added.)

¶ 156. The imposition of this new duty upon the circuit court is likely to lead to several adverse consequences.

¶ 157. First, independent review of negotiated plea agreements may become normative judicial behavior. This court's use of the adverb "independently" to

modify "review" signals de novo review. The majority's allusions to judicial "consideration of the views of the prosecutor" and giving "weight to the prosecutor's recommendation" are a fig leaf hiding the real import of the court's decision.

¶ 158. Second, if circuit courts have inherent power to reject proposed reduction or dismissal of the prosecutor's charges, there is reason to believe that circuit courts may also claim the power to reduce or dismiss charges with prejudice in "the public interest." A circuit court's power to dismiss charges with prejudice was rejected by only one vote in *State v. Braunsdorf,* 98 Wis. 2d 569, 569, 297 N.W.2d 808 (1980).

¶ 159. Third, the new duty imposed upon circuit courts will expose judges to criticism from third parties when plea agreements are controversial or do not play out as expected. After all, the court now has a "duty" to evaluate each plea agreement in terms of "the public interest." This is a virtual invitation for third parties to second-guess the circuit court's approval after an unsatisfactory outcome.

¶ 160. Fourth, the majority's opinion will put circuit judges in the middle of disputes between district attorneys and law enforcement. Law enforcement agencies may seek to turn circuit judges into allies against district attorneys they don't like.

(B) "[D]eciding whether to reject a plea agreement is squarely within the court's authority; to hold otherwise would permit encroachment by the executive branch into the realm that has historically, in Wisconsin, been that of the judicial branch." Majority op., ¶ 24.

COMMENT: Deciding whether to reject a plea agreement goes well beyond "deciding whether or not the . . . public interest, will be served by sustaining a motion on the part of the city attorney *to dismiss.*"

*Guinther,* 217 Wis. at 339 (emphasis added). By this decision the court expands its "inherent authority."

(C) "Our approach vests authority in the circuit court to determine what pleas are in the public interest without permitting the court to intrude on the authority of the prosecutor to decide what charges to file or whether to file charges in the first instance." Majority op., ¶ 26.

COMMENT: The historical fact is that the prosecution in *Guinther* was initiated by police, not the Milwaukee city attorney. The court's appointment of a private attorney to prosecute the case permitted the action to go forward. The effect of the decision in this case is to order the district attorney to prosecute the original charges or withdraw in favor of a court-appointed special prosecutor.

¶ 161. This decision, like *Guinther,* cannot reasonably rely on any statutory directive to the court. *Compare State v. Unnamed Defendant*, 150 Wis. 2d 352, 363–64, 441 N.W.2d 696 (1989). It relies solely upon judicial power.

(D) "We ... hold that a circuit court may, in an appropriate exercise of discretion, reject a plea agreement that it deems not to be in the public interest." Majority op., ¶ 27.

COMMENT: The court first establishes de novo review of plea agreements and then affords circuit courts "discretion" to "reject a plea agreement that it deems not to be in the public interest." *Id.* The majority's standard of review will make it difficult to overturn a circuit court's decision to reject a plea agreement. This result will systematically undermine the authority of district attorneys.

## CONCLUSION

¶ 162. The majority's decision is foreshadowed in previous cases, but it makes new law. I believe the change is not desirable and will undermine the authority of district attorneys and compromise the impartiality of circuit courts. For the reasons stated, I respectfully dissent.