REILLY, P.J.[1]
¶1 Esmeralda Rivera-Hernandez[2] appeals from two judgments of conviction based on her no contest plea to one count of battery, in violation of WIS. STAT . § 940.19(1), and one count of bail jumping, in violation of WIS. STAT . § 946.49(1)(a). Rivera challenges the circuit court's denial of the State's motion to amend the complaint to noncriminal ordinance violations.[3] As we conclude that the circuit court erroneously applied the "public interest" standard set forth in State v. Kenyon , 85 Wis. 2d 36, 270 N.W.2d 160 (1978), we reverse the decision of the circuit court.
¶2 In June 2016, Rivera and P.P., the victim in this case, were involved in an altercation. P.P. allegedly was seated in the passenger seat of a vehicle when Rivera opened the passenger door and became physical with P.P. P.P. told police that Rivera dragged her out of the car and pushed her to the ground and hit her repeatedly before family members eventually broke up the fight. P.P. had a cut on her knee and scratch marks on her arms. Rivera told police that P.P. started the altercation by kicking her in the stomach.[4]
¶3 The State filed a criminal complaint against Rivera on July 1, 2016, charging her with battery and disorderly conduct, both misdemeanors. At a hearing on October 31, 2016, the State explained to the court that it had originally agreed to enter into a deferred conviction agreement, involving no contact with P.P. as well as counseling for Rivera, but given recent information, it decided to dismiss the case. The prosecutor informed the court that P.P. had become "uncooperative" and "nonresponsive" with the State and that P.P. had sent Rivera several text messages that the Milwaukee Police Department was investigating. The State told the court that "given that the victim has been nonresponsive to my office and the fact that she sent these text messages to this defendant, I just don't think I can prove this case beyond a reasonable doubt any longer." The court put the matter over and asked the State for a brief in support of its motion to dismiss.
¶4 The State's letter to the court provided additional details concerning the relationship between these two women. It revealed that P.P. is the sister of Rivera's ex-boyfriend. In a previous case, Rivera "testified against her ex-boyfriend on domestic violence charges, which has created bad blood between her and [P.P.], and contributed to the facts in this case." The State went on to explain that while P.P. initially submitted a victim impact statement, she had been unresponsive to the State for some time. The State also provided the court with copies of the alleged text messages[5] and indicated that the State had reached out to P.P. about the test messages via letter and telephone, but received no response. The State concluded by noting that Rivera is twenty-two years old with no criminal record and "given the history between these two individuals as well as [P.P.'s] actions since charging the case, it is not in the public interest to pursue these charges."
¶5 The court denied the State's motion to dismiss. At the next hearing, the State made an oral motion to amend the two misdemeanors to two county ordinance violations of disorderly conduct. After two hearings and a call for written submissions, the court denied the motion to amend in April 2017.
¶6 A jury trial commenced on April 19, 2017, but due to a medical emergency, the court granted Rivera's request for a mistrial. On May 19, 2017, the State filed a second criminal complaint against Rivera, charging three misdemeanor counts of bail jumping based on contact Rivera allegedly had with P.P. in violation of a bond condition set in July 2016.
¶7 Rivera entered a global plea of no contest to one count of battery and one count of bail jumping. The remaining counts were dismissed and read in. The circuit court found Rivera guilty and sentenced her to twenty-four months' probation. Rivera appealed both circuit court cases.[6]
¶8 Before addressing the merits in these appeals, we note that the State argues that Rivera's no contest plea constitutes a waiver of all nonjurisdictional defects and defenses. State v. Multaler , 2002 WI 35, ¶54, 252 Wis. 2d 54, 643 N.W.2d 437. The guilty plea waiver rule is a rule of judicial administration, not a rule of power, as it "does not deprive an appellate court of its subject matter jurisdiction." State v. Riekkoff , 112 Wis. 2d 119, 123-24, 332 N.W.2d 744 (1983). "Therefore, we can in our discretion review claimed error, particularly if the issues are of state-wide importance or resolution will serve the interests of justice and there are no factual issues that need to be resolved." State v. Grayson , 165 Wis. 2d 557, 561, 478 N.W.2d 390 (Ct. App. 1991). We conclude that as there are no factual issues that need to be resolved and resolution of this matter will serve the interests of justice, we will not rely on the guilty plea waiver rule and will reach the merits.
¶9 Rivera frames this case as whether the circuit court erred in "refus[ing] to allow the amendment of the criminal Complaint to non-criminal ordinance violations." We agree, but also go further as this case is fundamentally about whether the circuit court erred in denying the State's initial motion to dismiss the complaint. Regardless of whether the question is if the circuit court erred in denying the State's motion to dismiss or the State's motion to amend, our standard of review is the same: erroneous exercise of discretion. See Kenyon , 85 Wis. 2d at 45 (noting the circuit court may exercise the discretion described in Guinther v. City of Milwaukee , 217 Wis. 334, 258 N.W. 865 (1935) ); see also State v. Conger , 2010 WI 56, ¶14, 325 Wis. 2d 664, 797 N.W.2d 341 (explaining that "it is implicit in the court's analysis in [Kenyon ] that the rejection is reviewed as an exercise of discretion"). We will sustain the circuit court's exercise of discretion if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." Loy v. Bunderson , 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).
¶10 We begin with the legal maxim set forth in Kenyon that "[t]he discretion resting with the district attorney in determining whether to commence a prosecution is almost limitless." Kenyon , 85 Wis. 2d at 45. Once a criminal proceeding is commenced and the jurisdiction of the court is invoked, however, "[p]rosecutorial discretion to terminate a pending prosecution in Wisconsin is subject to the independent authority of the trial court to grant or refuse a motion to dismiss 'in the public interest.' " Id. (citation omitted). While acknowledging that "[t]he standard that the decision should be 'in the public interest' is admittedly broad," the court in Kenyon explained:
The requirement that a ruling be "in the public interest" logically envisages some consideration of the effect of dismissal or refusal to dismiss on the general welfare. It would be impossible to make an exhaustive list of just what to take into account in this regard. Relevant factors would necessarily be keyed to the specifics of each case. However, in all cases some finding should be made with respect to the impact of the ruling on the public interest in proper enforcement of its laws and the public interest in allowing the prosecutor sufficient freedom to exercise his legitimate discretion, to employ to the best effect his experience and training, and to make the subjective judgment implicit in the broad grant of authority under [ WIS. STAT. §] 59.47.
Id. at 46-47.
¶11 In Kenyon , the defendant was charged with intentionally causing damage to property. Id. at 38. The complaint alleged that the defendant drove his vehicle into four motorcycles and that the damages were in excess of $1000, making the crime a felony. Id. at 39. At the preliminary hearing, the state called four individuals whose motorcycles were damaged, and they testified as to the dollar amount of the damages. The court sustained objections to the testimony based on hearsay. Id. In response, the state moved to dismiss the complaint without prejudice, which the court denied, citing fairness to the defendant. Id. at 39-40. The state therefore amended the complaint to a misdemeanor rather than a felony. Id. at 40. The state later moved to dismiss the amended complaint when it gained additional evidence as to the amount of damages and desired to again charge Kenyon with a felony. Id. The court refused, again citing fairness to the defendant. Id. Without dismissing or discharging the defendant, the state filed a second felony complaint based on the same facts, which the circuit court dismissed as "intolerable." Id. at 40-41.
¶12 The state in Kenyon argued that "a prosecutor in Wisconsin has the right to dismiss a pending prosecution without prior approval of the court." Id. at 41. Although the court disagreed that the prosecutor's power was absolute, it noted that "it is settled that the district attorney is vested with a great deal of discretion: 'The district attorney in Wisconsin is a constitutional officer and is endowed with a discretion that approaches the quasi-judicial.' " Id. at 42 (quoting State v. Peterson , 195 Wis. 351, 359, 218 N.W. 367 (1928) ). Relying on Guinther , however, the court noted that the case "set forth a general standard for limited judicial supervision of prosecutorial motions to dismiss which departed from the common law and clearly removed Wisconsin from the group of jurisdictions where absolute prosecutorial discretion prevailed." Kenyon , 85 Wis. 2d at 43. Noting that the circuit court properly recognized that the state did not have authority to automatically secure a dismissal, the court in Kenyon ultimately determined that the circuit court's reasons for denying the motions to dismiss were "legally insufficient" as it failed to properly consider the public interest. Id. at 47.
¶13 Based on Kenyon , we conclude that the circuit court erroneously exercised its discretion by not properly considering the public interest. Here, the circuit court failed to take into account the position and the discretion of the State. Kenyon addresses basically two minimum findings to ensure that a court's decision to deny a motion to dismiss is "in the public interest": (1) the public interest in proper enforcement of its laws and (2) the public interest in allowing the prosecutor sufficient freedom to exercise his or her legitimate discretion, employ to best effect his or her experience and training, and make the subjective judgment implicit in the exercise of the broad prosecutorial authority. Id. Based on the record, the circuit court appeared to base its decision entirely on the first factor by repeatedly stressing the importance of "ensuring that the public is protected and that the laws of the State are" prosecuted fairly and the rights of third persons protected. The court stressed that this is a "serious complaint," "a significant battery," and "serious allegations," despite Rivera being charged with a misdemeanor.
¶14 What the circuit court failed to properly consider was the public interest in deferring to the prosecutor's legitimate discretion. The court recognized a concern with "get[ting] into being the prosecutor," and it stated on the record, "The Courts shouldn't be prosecutors." Despite this statement, the circuit court did exactly that. The court explained, "I'm not sure that the discretion has been thoroughly and completely exercised here," but what the court really meant was that it disagreed with the State's exercise of discretion, not that it had not been exercised. According to the court,
Even if I defer to the prosecutor, I don't think the prosecutor has showed and demonstrated to the Court that this is a thorough-that dismissal is being-how do I phrase this? That the prosecution considered all the facts that the Court sees in this Criminal Complaint, the existence of witnesses, the existence of physical evidence, the presence of victim impact statement, which certainly sets forth a different story than the prosecution states, I'm not sure that the discretion has been thoroughly and completely exercised here. We have texts, but we haven't even talked to the victim. I understand we reached out, but she has called, so it's not an impossibility. And I don't know where the texts fit. And it just seems as though we have two texts with unknown-relatively unknown ownership. And I know the defense has discussed that. But even if we assume those texts are true, is this a legitimate-should I be deferring? If we admit all of that, is this a case that we're left with no victim, therefore, no case. And that's not what the State has alleged. And this is a significant battery.
(Emphasis added.)
¶15 Under Kenyon , courts have the authority to review a motion to dismiss to determine whether dismissal of the case is in the public interest, but we see no statement in Kenyon that the court may completely substitute its discretion for that of the prosecutor. The State in this case had valid concerns with its ability to prosecute this case, both with the cooperation, or lack thereof, of the victim as well as the victim's alleged behavior after the charge was filed. The State should not be forced to prosecute a case that it believes it cannot win or forced to prosecute a misdemeanor case that it wishes to amend to a felony charge such as in Kenyon . Under the public interest standard, the court does not have a right to step in and put itself in the position of the prosecutor, reviewing and making judgments about witnesses and evidence.
¶16 We do not know all the reasons-nor are we entitled to know all the reasons, i.e., ongoing investigations-as to why the State wished to dismiss without prejudice. In this case, the court infringed on the discretion of the prosecutor by concluding that the prosecutor had enough to go to trial despite the prosecutor's contradictory finding that he or she did not. The prosecutor may have information that it did not wish to share in a public courtroom regarding its ability or desirability to prosecute. It is one thing for the court to check prosecutorial discretion for abuse under the public interest standard, but it is entirely another for the court to substitute its discretion and force the prosecutor to act contrary to his or her discretion. New facts came to light after the State had decided to charge Rivera with these crimes. The State, therefore, had legitimate reasons for exercising its discretion as to how it wished to proceed. A dismissal without prejudice would allow the State to refile if it wished. The court erred in not allowing the prosecutor the freedom to exercise his or her legitimate discretion based upon his or her experience and training and to make the subjective judgment implicit in the exercise of the district attorney's broad prosecutorial authority.
¶17 Accordingly, we conclude that the motion to dismiss and the motion to amend were improperly denied, and we reverse and remand to the circuit court for further proceedings consistent with this decision.
By the Court. -Judgments reversed and causes remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

We will refer to the defendant-appellant as "Rivera" as that is how she is referenced in her brief-in-chief and in the first complaint filed.

Rivera argues that the circuit court erroneously referred to her as an illegal immigrant. During the proceedings, defense counsel brought the circuit court's attention to Rivera's immigration status, specifically that Rivera "as a child [was] brought illegally into the United States." Defense counsel explained on the record when the motion to amend was made that "given the political climate it's one of the reasons that we're seeking ... ordinance [violations] instead of going to trial on this." Rivera spends a substantial portion of her briefs arguing that the circuit court improperly referred to her as an "illegal" at the April 18, 2017 hearing where the court denied the motion to amend. Although appellate counsel erroneously stated in its brief-in-chief that Rivera had applied for Deferred Action of Childhood Arrivals (DACA), it argues that she should not be considered "illegal" or "unlawful," and it was error for the court to do so. As we decide this case on different grounds, we will not further address Rivera's arguments as to whether she is considered "illegal" or whether the court improperly addressed her immigration status.

Both women were at the same party where alcohol was present.

The text message allegedly from P.P. to Rivera on September 9, 2016, stated, "Fuck u stupid bitch. When I fkn [sic] see u your [sic] going to know me. I know where u fkn [sic] work buena vista. Fkn [sic] told u not to mess with me. Fuck u hoe." Additional text messages received on September 14, 2016, allegedly from P.P. stated:
Stupid bitch! Get out of our fucking life!! If you're [sic] have ur bbydady stop fucking with my bf. I know where u live and where u work so u better be careful. You're living by 32th [sic] st, working at bvista and ur fucking friend live by 58th st. So be careful bitch! I'm watching you.

We granted Rivera's motion to consolidate the two cases for the purposes of appeal on April 13, 2018.