COURT OF APPEALS
DECISION
DATED AND FILED

October 12, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP450-CR**

Cir. Ct. No. **2020CM1470**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CAROLINE J. ARNDT,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Racine County: MARK F. NIELSEN, Judge. *Reversed and cause remanded with directions.*

¶1     LAZAR, J.[1]  This case involves not only a plea bargain but the corresponding responsibility of circuit courts to insure that plea colloquies with

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

defendants establish that they actually understand and agree with the bargain before the plea is accepted and a sentence is imposed. Without such a personal colloquy and finding by the circuit court, the plea may be withdrawn upon the motion of the defendant. In this case, the plea colloquy was inadequate in two respects that together necessitate the withdrawal of Caroline J. Arndt's plea and a remand back to the circuit court to allow for that withdrawal.

¶2    In the midst of appellate briefing, this court issued two orders[2] advising the State that its response brief was delinquent and that the matter may be summarily disposed of, and possibly summarily reversed pursuant to WIS. STAT. RULE 809.83(2), if no brief was filed. After the second order, the State, by letter dated August 24, 2022, advised this court that it did not intend to file a brief, but rather asked that the appeal be decided on just Arndt's brief. Following the August 30, 2022 letter, Arndt asked this court to conclude the State had conceded her arguments and to summarily reverse the circuit court's denial of her postconviction motion. In that motion, she asked the court to allow her to withdraw her plea and remand for an evidentiary hearing as well as to alter the placement of the domestic abuse surcharge on the amended judgment of conviction and then remand for a hearing on that issue.

¶3    Not only is it appropriate to summarily reverse the circuit court for a failure to join issue by the State, but it is appropriate to do so on the merits on two of the grounds asserted by Arndt for a plea withdrawal because the plea colloquy

---

[2] The first order advised that the State's brief was delinquent and was due within five days absent a request for extension upon good cause shown. *State v. Arndt*, No. 2022AP450-CR, order (WI App July 19, 2022). The second order advised that a response brief was required by September 9, 2022, or this court may summarily reverse. *State v. Arndt*, No. 2022AP450-CR, order (WI App Aug. 19, 2022).

was legally insufficient. That being said, the amended judgment of conviction need not be amended yet again; it is void ab initio upon this reversal.

## BACKGROUND

¶4    Arndt was charged on October 9, 2020, in Racine County with disorderly conduct. The charge included two enhancers: domestic abuse and repeater (for prior offenses). The details of Arndt's conduct are not relevant. Arndt spent fourteen days in custody while the case was pending.

¶5    Arndt entered into a plea bargain and signed[3] a plea questionnaire and waiver of rights form on April 9, 2021, in which she pled no contest to the charge without the repeater enhancer. A copy of part of the disorderly conduct jury instruction was attached to the plea questionnaire. *See* WIS JI—CRIMINAL 1900. It contains the statutory definition of the offense and lists the factors that would have to be proved at trial.

---

[3] On the form, Arndt signed beneath the following statements and declaration of her voluntary, intelligent and knowing decision to enter in the plea bargain, to wit:

**Voluntary Plea**

I have decided to enter this plea of my own free will. I have not been threatened or forced to enter this plea. No promises have been made to me other than those contained in the plea agreement. The plea agreement will be stated in court or is as follows: Plead to charge w/o repeater enhancer. State will recommend 15 days jail CFTS and a fine. Defense free to argue.

**Defendant's Statement**

I have reviewed and understand this entire document and any attachments. I have reviewed it with my attorney (if represented). I have answered all questions truthfully and either I or my attorney have checked the boxes. I am asking the court to accept my plea and find me guilty.

¶6      On that same date, the circuit court[4] conducted a very limited and short plea colloquy and then issued a sentence after accepting Arndt's plea. The colloquy with Arndt was approximately two and one-half pages (out of a ten-page transcript of the entire plea and sentencing). The length of a colloquy does not necessarily indicate whether it is statutorily adequate, but it is worth noting.

¶7      Arndt was sentenced to fifteen days (time served due to good time credit together with fourteen days in jail). The domestic abuse enhancer was included with the offense.

¶8      Concerned that the judgment of conviction incorrectly identified the offense as domestic abuse and that the circuit court had not complied with the statutory requirements for a plea colloquy, Arndt filed a motion for postconviction relief on January 31, 2022. She sought to withdraw her plea to avoid a manifest injustice and, in the alternative, to correct the judgment of conviction with respect to the reference to domestic abuse as an offense. Without holding any hearings, the circuit court[5] denied the motion to withdraw the guilty plea but granted the motion to amend the judgment of conviction.

¶9      Still concerned that the judgment of conviction was not properly amended, Arndt filed a motion to reconsider the order amending judgment of

---

[4] The Honorable Stephen A. Simanek.

[5] Now, the Honorable Mark F. Nielsen.

conviction on March 2, 2022. The circuit court summarily denied the motion on that same date. This appeal followed.[6]

## DISCUSSION

### I.  A summary reversal is appropriate.

¶10    A "[f]ailure to file a respondent's brief tacitly concedes that the [circuit] court erred," ***State ex rel. Blackdeer v. Township of Levis***, 176 Wis. 2d 252, 260, 500 N.W.2d 339 (Ct. App. 1993) (citation omitted), and allows this court to assume the respondent concedes the issues raised by the appellant, ***Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979). It is not the prerogative of parties who fail to file briefs to ask this court to act as both advocate and judge, ***State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992), by requiring the court to independently develop a litigant's arguments, ***Gardner v. Gardner***, 190 Wis. 2d 216, 239-40 n.3, 527 N.W.2d 701 (Ct. App. 1994). "Judges are not like pigs, hunting for truffles buried in briefs," ***United States v. Dunkel***, 927 F.2d 955, 956 (7th Cir. 1991), or in the record.

¶11    If a respondent fails to brief an appeal—as the State has done here despite two orders seeking precisely that—this court may exercise its discretion and summarily reverse the circuit court provided we determine that the respondent has abandoned the appeal or has acted egregiously or in bad faith. ***Raz v. Brown***, 2003 WI 29, ¶18, 260 Wis. 2d 614, 660 N.W.2d 647; *see also **Blackdeer***, 176

---

[6] The notice of appeal indicates that the appeal is of the amended judgment of conviction, entered on February 28, 2022, and of the order denying motion to reconsider, entered on March 9, 2022. However, the appellate brief seeks reversal of the earlier February 24, 2022, order denying the initial postconviction motion to withdraw the guilty plea as well as the March 2, 2022, order denying a motion to reconsider the order amending judgment of conviction. Both orders were considered in this decision.

Wis. 2d at 259-60. Here, the State has not acted egregiously or in bad faith, but it has abandoned[7] this appeal.

¶12 For that reason, summary reversal is appropriate in this case. This court could conclude this opinion here, but it believes it is important to provide further guidance as to why the plea colloquy was deficient and why the denial of the motion seeking to withdraw the plea must be reversed.

## II. Reversal is also appropriate on the merits.

¶13 "Plea agreements occur routinely as part of the work of prosecutors, defense attorneys, and courts." *State v. Conger*, 2010 WI 56, ¶15, 325 Wis. 2d 664, 797 N.W.2d 341. "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260 (1971). "Properly administered, it is to be encouraged." *Id.*

¶14 The United States Supreme Court has deemed the entry of a guilty plea to be a "[c]ritical stage[]" in criminal proceedings. *Missouri v. Frye*, 566 U.S. 134, 140 (2012). In fact, plea bargains are now "so central to the administration of the criminal justice system" that there is an argument to be made that they now *are* the criminal justice system. *Id.* at 143-144 (citing Scott & Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992)).

---

[7] The State, unfortunately, did not indicate in its August 24, 2022 letter that it was taking no position or that it was opposed (or even in favor) of Arndt's issues on appeal. That could easily have been done even though it would not have lessened the conclusion that the appeal had been abandoned. While this court acknowledges that district attorneys' offices (as well as public defenders' offices) are currently operating with significant backlogs and that time is precious, it would behoove the State to file at least a short brief so as to stand up for the decisions made by circuit courts. Summary reversals are somewhat drastic and do not necessarily or always reflect the true status of the case on appeal.

¶15 The United States "Constitution sets forth the standard that a guilty or no contest plea must be affirmatively shown to be knowing, voluntary, and intelligent." *State v. Bangert*, 131 Wis. 2d 246, 260, 389 N.W.2d 12 (1986); *State v. Howell*, 2007 WI 75, ¶23, 301 Wis. 2d 350, 734 N.W.2d 48. Without those three basic prerequisites, "a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'" *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906 (quoting *State v. Van Camp*, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997)); *see also* *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) ("[A] plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." (footnote omitted)).

¶16 Wisconsin requires a circuit court to conduct a personal colloquy with the defendant in order to memorialize what the defendant knew at the time of the plea itself. WIS. STAT. § 971.08(1); *Bangert*, 131 Wis. 2d at 256-57. The reason for this personal touch is to "assist the [circuit] court in making the constitutionally required determination that a defendant's plea is voluntary." *Bangert*, 131 Wis. 2d at 261.

¶17 As well, there must be "manifest injustice" to warrant the withdrawal of a plea after sentencing:

> When a defendant moves to withdraw a plea after sentencing, the defendant "carries the heavy burden of establishing, by clear and convincing evidence, that the [circuit] court should permit the defendant to withdraw the plea to correct a 'manifest injustice.'" Here, the burden is on [the defendant] to prove that plea withdrawal is warranted because "the state's interest in finality of convictions requires a high standard of proof to disturb that plea." Therefore, in order to disturb the finality of an accepted plea, the defendant must show "a serious flaw in the fundamental integrity of the plea."

7

*State v. Cain*, 2012 WI 68, ¶25, 342 Wis. 2d 1, 816 N.W.2d 177 (citations omitted). In addressing whether there is manifest injustice, a court may go beyond the plea colloquy itself and look to the totality of the circumstances. *Id.*, ¶31; *Bangert*, 131 Wis. 2d at 274-75.

¶18 Here, Arndt raises six requirements that she asserts the circuit court failed to meet in her plea colloquy. Two of these are easily set aside.[8] One raises potential concerns, but is not sufficient on its own to warrant withdrawal. One is a concern but has been held not to be fatal. And, the last two tilt the scale in favor of reversal.

¶19 Turning to the requirement raising a potential concern, Arndt is correct that the circuit court did not advise or personally establish that she understood the court was not bound by the terms of any plea bargain. This is

---

[8] Arndt's first assertion is that the circuit court did not "determine the extent of Ms. Arndt's education and general comprehension to assess her ability to understand the issues at the hearing," but this concerns information already on Arndt's plea questionnaire. While it is best practice to personally inquire about this, the court's failure to do so is not enough to warrant a plea withdrawal or a remand to consider the same, especially when Arndt acknowledged and agreed that she had gone over the plea questionnaire with her attorney and responded negatively to the question of whether "there is anything on [the plea questionnaire] that confused [her] or that [she didn't] understand?" *See State v. Bangert*, 131 Wis. 2d 246, 285-86, 389 N.W.2d 12 (1986). In addition, she did sign beneath the two attestations as to her "Voluntary Plea" and the "Defendant's Statement." *See supra* note 3. These both indicate that she had reviewed the entire form and had gone over it with her attorney. Her counsel also signed a corresponding statement: "I am the attorney for the defendant. I have discussed this document and any attachments with the defendant. I believe the defendant understands it and the plea agreement. The defendant is making this plea freely, voluntarily, and intelligently. I saw the defendant sign and date this document."

Arndt also asserts that the circuit court did not "alert [her] that an attorney may discover defenses or mitigating circumstances." While true, this would not, standing alone, be a basis for plea withdrawal since Arndt was represented by counsel and agreed that she had enough time to talk to her lawyer. Her counsel agreed that she was "satisfied Ms. Arndt understands her rights, the charge, [and] the penalty" and that Arndt "wishes to voluntarily enter a plea." Arndt had counsel, she had time to confer with counsel, and counsel indicated she was satisfied Arndt understood the process.

troubling, but there are indications that the circuit court attempted to explain the process to Arndt and then ended up accepting and imposing the joint recommendations of the parties, even granting Arndt good time credit so that her sentence was completely time served. That, especially in view of the verifications spelled out above Arndt's signature, is sufficient to refute any claim of manifest injustice on this point.

¶20 Next, Arndt complains that the circuit court did not expressly go over each and every constitutional right that she was waiving by entering her plea. Arndt answered affirmatively when asked by the court if the questionnaire explained her rights and that she had gone over it with her lawyer. She also denied that there was anything on the form that confused her or that she did not understand. She further agreed that she had enough time to talk with her lawyer and that she didn't have any questions about what was "going on." In addition, her attorney answered affirmatively when asked if she had "signed off" and was "satisfied Ms. Arndt understands her rights, the charge, the penalty, and she wishes to voluntarily enter a plea."

¶21 Arndt, like the defendant in *Bangert*, signed the plea questionnaire (with the two verifications), acknowledged in the plea colloquy that her constitutional rights had been explained to her by her attorney and that she understood them. And her attorney, having also signed the questionnaire, vouched during the colloquy that Arndt understood her rights. Under similar facts, the *Bangert* court found that the defendant was "aware of the constitutional rights which he was waiving" and that his plea was "knowingly and voluntarily entered." *Bangert*, 131 Wis. 2d at 285-86. The same applies for Arndt.

¶22 Accordingly, this basis, too, is not sufficient to reverse the circuit court as to whether the plea should be withdrawn.

9

¶23 That brings this court to the last two alleged errors, each of which are of great concern. The circuit court did not determine whether any promises, agreements, or threats were made in connection with Arndt's plea. This goes to the very heart of the voluntary nature of a plea. Without such inquiry and the ability of the circuit court to watch the defendant's face and to scrutinize her response to this question, how can it find that the plea is, indeed, voluntary? There are certain flashpoints when defendants should be present in person before the court, not just so they are able to see and hear the court, but so that the court can see and hear them and assess their credibility. Pursuant to WIS. STAT. § 971.04(1)(g), a defendant has "a statutory right to be present in the same courtroom as the judge when he made his guilty plea because the judge accepted [the defendant's] plea and pronounced judgment in regard to the crime to which [the defendant] pled." *See State v. Soto*, 2012 WI 93, ¶27, 343 Wis. 2d 43, 817 N.W.2d 848. This is especially important because it is critical for a circuit court to determine the voluntariness of a plea while also personally observing the defendant. There was no such inquiry of Arndt and no opportunity to assess her credibility.

¶24 While these questions on voluntariness seem similar to not specifically inquiring as to the constitutional rights Arndt was waiving, there is a distinction. A circuit court has to ask the question about promises, agreements, or threats to a defendant in order to fulfill its statutory duties under WIS. STAT. § 971.08(1)(a) to "[a]ddress the defendant personally and determine that the plea is made voluntarily" before accepting a plea. While it may be statutorily sufficient to not personally inquire as to the defendant's age and educational background or to spell out the constitutional rights she is waiving, there has to be *some* inquiry into the voluntariness of the plea, however basic. Standing alone, however, there is a question as to whether this failure would be sufficient to justify withdrawal of

a plea. This court need not answer that question here because there was another inadequacy in the colloquy regarding the nature of Arndt's charge.

¶25 The court in ***Bangert*** explains that there are several ways in which a circuit court may ascertain a defendant's understanding of a charge in a plea colloquy. There are no "inflexible guidelines" that must be followed, but it is "mandatory upon the trial judge to determine a defendant's understanding of the nature of the charge at the plea hearing." ***Bangert***, 131 Wis. 2d at 267. The court then lists three possible methods—summarizing the elements of the crime from the appropriate jury instructions, asking defense counsel if this information was shared with the defendant and then obtaining from counsel a recitation of the elements on the record in the defendant's presence, and referring to the record or other evidence of the defendant's knowledge—each of which requires a summary on the record that is acknowledged by the defendant. ***Id.*** at 267-68. This is not an exclusive list. ***Id.*** at 268. The key is that the defendant must hear the elements and acknowledge them, preferably during the plea colloquy.

¶26 The circuit court undertook none of these methods regarding Arndt's understanding of her disorderly conduct charge. It did not refer to the jury instruction or the prior record in any respect. It did not reference the allegations in the complaint. It did ask if defense counsel went over the plea questionnaire with Arndt, but it did not ask counsel to summarize the elements on the record so that it could ascertain if Arndt knowingly entered into the plea bargain. The fact that part of the jury instruction was attached to the plea questionnaire is not sufficient; the elements of Arndt's crime were not addressed on the record. *See* ***id.*** at 267-68. Without some type of inquiry into the nature of the charge, the circuit court failed to meet its mandatory duties.

¶27 This court acknowledges that Arndt's plea colloquy was cursory. That alone does not make it statutorily invalid. These last two errors in this very

critical stage of Arndt's criminal case, together, do add up to a manifest injustice that warrants the withdrawal of Arndt's plea and a remand for further proceedings.

¶28    Arndt also contends[9] that she was on medication that made it impossible for her to understand what she was doing and saying at the plea colloquy. This is potentially belied by the fact that, while she did check the box on the questionnaire to indicate she had taken medication within the last twenty-four hours, she expressly told the circuit court that this would not impact her ability to proceed with the plea. This is no longer relevant.

¶29    Finally, Arndt asks that this court amend, again, her judgment of conviction with respect to the nomenclature and placement of the term domestic abuse, pursuant to statements made at the sentencing as well as the unpublished case, *State v. Neis*, No. 2009AP1287-CR, unpublished slip op. ¶15 (WI App July 15, 2010).[10] It is not necessary, however, for this court to address this last issue due to the reversal and grant of Arndt's motion to withdraw her guilty plea. Without a guilty plea, there can be no judgment of conviction to amend. It is void ab initio.

---

[9] This new assertion is, however, problematic. What must a circuit court do when a defendant admits to having taken medication within the last twenty-four hours, but says it will not impact her ability to continue the plea colloquy? Circuit courts are not omniscient. Obviously, if a defendant appears groggy or has noticeably slurred speech—despite assurances that the plea may continue—a circuit court can delay and reschedule. But, if a defendant appears coherent, speaks clearly and states that she can continue, query whether that is sufficient to allow the plea to be taken?

[10] Unpublished cases may not be cited for precedential value, but may be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(a), (b).

## CONCLUSION

¶30     This court concludes that Arndt's appeal was abandoned by the State and that, therefore, summary reversal is appropriate. In addition, upon a review of the merits, this court also concludes that, based upon the circuit court's failure to ascertain that Arndt's plea was voluntary and its additional failure to ensure that Arndt understood the nature of the charge so as to enable her to enter a knowing plea, the judgment and orders of the circuit court are reversed. There is no need to address the domestic abuse enhancer's placement on the amended judgment, as this reversal renders it void ad initio.

¶31     Upon reversal (summarily or on the merits), this matter shall be remanded to the circuit court for further proceedings, with the direction that Arndt be allowed to withdraw her plea.

        *By the Court.*—Judgment and orders reversed and cause remanded with directions.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.